LOUISE L. LENTZ v. DR. FRANK A. THOMPSON, JR.

(Filed 20 January, 1967.)

**1. Physicians and Surgeons § 11—**

A surgeon is not an insurer, and in order to recover for malpractice, plaintiff must offer evidence sufficient to permit a legitimate inference that the surgeon failed to possess the required skill and ability, or that he failed to act according to his best judgment and in a careful and prudent manner in performing the operation in suit, the sufficiency of the evidence being a question of law for the court.

**2. Physicians and Surgeons § 16—** *Evidence held insufficient to show negligence on part of physician in severing accessory nerve during operation.*

Where all of the evidence tends to show that defendant was an able, careful and meticulous surgeon, that he was engaged to remove enlarged lymph glands or nodes from plaintiff's neck for pathological test for malignancy, which required that the glands or nodes be removed intact without severing or breaking the outside covering of the diseased nodes, that the nodes were removed intact, together with testimony of plaintiff's own expert that in such operation there was inherent risk of injury to or severance of the spinal accessory nerve, *is held* insufficient to be submitted to the jury on the issue of the surgeon's negligence, notwithstanding the evidence supports an inference that the surgeon severed plaintiff's spinal accessory nerve during the operation.

APPEAL by plaintiff from judgment of involuntary nonsuit entered by *Latham, S.J.,* June, 1966 Session, CABARRUS Superior Court.

The plaintiff alleged that the defendant, as her surgeon, undertook to perform an operation for the removal of two enlarged nodes or glands from the left side of her neck. In performing the operation he severed the spinal accessory nerve. She alleged negligence in three particulars: (1) He failed to advise the plaintiff of the hazards of the operation; (2) he failed to locate the nerve in the region of the operation and avoid severing it; (3) after the severance he failed to discover and repair the damage.

The defendant, by answer, admitted he performed the operation on the plaintiff and removed two enlarged malignant glands. He denies that he severed the spinal accessory nerve or that he had any knowledge of any injury to it. He alleged the nerve has no constant anatomical relationship to the enlarged glands and, in their diseased condition, if the nerve was severed, it was so concealed by the surrounding tissue that its presence in the operating area was not discoverable, and any damage to it by the operation was not detected.

The plaintiff called and examined as her expert witnesses Dr. Thompson, the defendant, Dr. Barringer, her family physician, who had advised the exploratory operation, and Dr. Heinig, who performed the exploratory operation one year later and discovered the ends of the accessory nerve imbedded in the scar tissue formed in the healing process after Dr. Thompson's operation.

The defendant called and examined the pathologist, Dr. Williams, who completed the biopsy which disclosed the malignancy of the enlarged glands. The defendant also called Dr. Bailey and Dr. Floyd.

The evidence of the experts for both parties was free from material conflict. All who testified on the subject agreed the removal of the diseased nodes by surgery was required; that the removal process required the utmost care to prevent the breaking or rupturing of the shell or outer covering of the nodes because of the danger of spreading the infection or malignancy to surrounding areas. All agreed that the accessory nerve is very small and its course indefinite and wandering in the area of the operation. Because of the enlargement of the diseased glands the final stages of the removal process required that the gland be lifted up and separated from surrounding tissue without a good view of the bottom of the gland.

The evidence disclosed that the nodes or glands, in their normal condition, are about the size of a pinhead. Those removed by Dr. Thompson were oval in shape, one the size of a "nickel" and the

other the size of a "ten-cent piece." They were imbedded from a half-inch to an inch below the surface of the skin.

The pathologist, Dr. Williams, testified, "These were intact nodes, perfectly removed." "I have observed him (Dr. Thompson) at work in the operating room of Cabarrus Hospital for 16 years. In my opinion he is a very able, capable, and meticulous surgeon."

Dr. Bailey testified: "There is a very definite inherent danger that applies, regardless of the care and skill of the operating physician."

The plaintiff's evidence disclosed that after the operation she had pain in her shoulder and the normal use of her left arm and shoulder became affected. About one year later Dr. Heinig performed an exploratory operation, in the course of which he discovered the ends of the accessory nerve imbedded in the scar tissue developed in the healing process after Dr. Thompson's operation. The severed ends of the nerve were approximately ¼ inch apart. The left shoulder and arm muscles had suffered some atrophy on account of the severed nerve. Dr. Heinig expressed the opinion that the severance occurred at the time of the first operation. He testified on cross-examination: "It is common knowledge in medicine, in an operation for removal of enlarged lymph glands from the posterior cervical triangle of an adult female for biopsy purposes, there is an inherent risk of injury to or severance of the spinal accessory nerve when the operation is performed in accordance with approved medical and surgical practices in the locality of Cabarrus County."

Dr. Barringer, for the plaintiff, testified, "I made arrangements for her to be admitted to the hospital on my service . . . I wanted the surgeon to physically remove the nodes so that the pathologist could help me make the diagnosis. That is all I wanted the surgeon to do."

At the close of the evidence the court entered judgment of nonsuit and dismissed the action. The plaintiff, having preserved her exceptions, appealed.

*D. D. Smith, Hobart Morton, Robert L. Warren for plaintiff appellant.*

*Carpenter, Webb & Golding for defendant appellee.*

HIGGINS, J.  In passing on the sufficiency of the evidence to go to the jury, we must assume that Dr. Thompson severed the plaintiff's spinal accessory nerve during the operation for the removal of the malignant glands. The evidence permits that finding. Some-

thing more is necessary,. however, to establish the defendant's civil liability. All the experts who testified in the case for both parties emphasized the necessity of protecting the covering or shell over the diseased nodes during the removal in order to prevent the spread of infection which a break or leak in the covering would permit. In the removal procedure, therefore, the intact separation of the node from its surroundings requires the pressure to be applied on the surroundings rather than on the body of the node. According to the evidence the surroundings consist of tissues and muscles, and fatty substances which are interlined with blood vessels. These must be cut and sutured. According to the defendant's expert, Dr. Heinig, in performing the biopsy there is "an inherent risk of injury to or severance of the accessory nerve when the operation is performed in accordance with approved medical and surgical procedures."

In order to warrant a jury in finding liability on the part of the surgeon, negligence must be established by the evidence. In order to escape ·nonsuit, evidence sufficient to permit a legitimate inference of facts constituting negligence must be offered. *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356. Ordinarily, the Court must determine as a matter of law whether the evidence in its light most favorable to the plaintiff is sufficient to permit legitimate inference of the facts necessary to be proved in order to establish actionable negligence. *Construction Co. v. Board of Education,* 262 N.C. 295, 136 S.E. 2d 635. "It is the duty of the court to allow the motion (nonsuit) in either of two events: First, when all the evidence fails to establish a right of action on the part of the plaintiff; second, when it affirmatively appears from the evidence as a matter of law that the plaintiff is not entitled to recover." *Jenkins v. Fowler,* 247 N.C. 111, 100 S.E. 2d 234; *Walker v. Story,* 256 N.C. 453, 124 S.E. 2d 113. However, as stated by Barnhill, C.J., in *Kennedy v. Parrott,* 243 N.C. 355, 90 S.E. 2d 754, ". . . where the conduct relied on rests on judgment, opinion, or theory, such as in case of a surgeon performing an operation, the ordinary rules for determining negligence do not prevail. The reason is that when one who possesses the requisite skill and ability acts according to his best judgment and in a careful and prudent manner he is not chargeable with negligence. *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762; *Jackovach v. Yocom,* 237 N.W. 444, and authorities cited. See also, Annos. 26 A.L.R. 1036; 53 A.L.R. 1056; and 139 A.L.R. 1370. . . . Furthermore, proof of an error of judgment and nothing more will not suffice."

In *Galloway v. Lawrence,* 266 N.C. 245, 145 S.E. 2d 861, Lake, J., for the Court, said: "The duty which a physician or surgeon owes his patient is determined by the contract by which his services are

engaged. *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356. Ordinarily, he is not an insurer of the success of his treatment of or operation upon the patient and, in the absence of proof of his negligence in treatment of the patient, or of his failure to possess that degree of professional knowledge and skill ordinarily had by those who practice that branch of the medical art and science which he holds himself out to practice, he is not liable in damages even though the patient does not survive the treatment or emerges from it in worse condition than before."

In the instant case the family physician had the plaintiff admitted to the hospital "on my own service," for the purpose of having the enlarged glands removed. He selected Dr. Thompson to perform the surgery. The plaintiff approved the selection. Dr. Barringer testified he wanted the surgeon to "physically remove the nodes so that the pathologist could help me make a diagnosis. That is all I wanted the surgeon to do."

All the evidence shows the defendant is a very able, careful and meticulous surgeon. The pathologist testified: "These were intact nodes, perfectly removed." In this situation the evidence fails to show the surgeon is liable for the unfortunate result. *Galloway v. Lawrence, supra; Watson v. Clutts,* 262 N.C. 153, 136 S.E. 2d 617; *Hunt v. Bradshaw, supra; Hawkins v. McCain,* 239 N.C. 160, 79 S.E. 2d 493; *Wilson v. Hospital,* 232 N.C. 362, 61 S.E. 2d 102; *Buckner v. Wheeldon,* 225 N.C. 62, 33 S.E. 2d 480. The evidence failed to measure up to the standards required by our decisions. The judgment of the Superior Court is

Affirmed.