**John Albert GALLAGHER and Kimberly Miriam Gallagher, individually and as natural guardians for Lisa Marie Gallagher, Plaintiffs,**

**v.**

**DUKE UNIVERSITY, the Private Diagnostic Clinic, and George H. Mickey, Ph.D., Defendants.**

No. C–84–535–D.

United States District Court,
M.D. North Carolina,
Durham Division.

June 30, 1986.

Donald H. Beskind, Durham, N.C., and Neil R. Rosen, Pittsburgh, Pa., for plaintiffs.

Joel M. Craig, Timothy C. Barber, E.C. Bryson, Jr. and William Faison, Durham, N.C., Robert M. Clay and H. Lee Evans, Jr., Raleigh, N.C., for defendants.

MEMORANDUM OPINION
AND ORDER

ERWIN, District Judge.

This matter is before the court on motions by two defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and on motions to dismiss pursuant to Rule 12(b)(6) by all defendants. The parties have briefed all

the issues, and argument was heard in Greensboro on May 22, 1986. The motions are now ready for a ruling.

## Facts

Plaintiffs John and Kimberly Gallagher conceived a child during 1981. The infant, Jennifer Gallagher, was born on October 10, 1981 in Jacksonville, North Carolina. She suffered from multiple birth defects and was transferred to Duke University Medical Center (Duke). At Duke, blood samples were taken from Jennifer for the purpose of a chromosome analysis. Dr. George Mickey, a cytogeneticist, performed a test of chromosomal makeup known as a karyotype analysis and reported his findings that Jennifer had no genetic abnormalities. Jennifer Gallagher died on October 30, 1981.

Subsequently, the Gallaghers met with employees of Duke. The Duke staff members informed the Gallaghers that based upon the results of genetic tests showing no chromosomal deficiencies in Jennifer, the Gallaghers' chances of having a normal child were the same as other couples in the general population. Further, since the tests on Jennifer showed no genetic defects, neither of the Gallaghers were tested for abnormal genetic traits or other chromosomal variances.

Shortly thereafter, the Gallaghers began trying to conceive again. During the summer of 1982, Kimberly Gallagher became pregnant. The Gallaghers were referred to the University of North Carolina Genetic Counseling Department (UNC), where it was determined that based on the normal karyotype readings of Jennifer Gallagher, amniocentesis was not indicated. Instead, Mrs. Gallagher received monthly ultrasound tests.

On March 21, 1983, Lisa Gallagher was born. Like her sister, she has suffered from multiple birth defects since delivery. She was transferred to Duke, where Dr. Mickey performed a karyotype analysis of her chromosomes. The results showed a chromosome abnormality, diagnosed as Trisomy 9, a condition involving the transloca-tion of genetic material between chromosomes resulting in unbalanced distribution of genetic information. Dr. Mickey then reexamined the slides he had previously taken of Lisa's late sister, Jennifer. This time, Dr. Mickey's reading of the karyotype analysis disclosed a chromosome abnormality in Jennifer, identical or very similar to the condition affecting Lisa.

Again referred to UNC, the Gallaghers received further testing showing that John Gallagher was a carrier of the genetic abnormalities which he had passed on to his daughters. The Gallaghers were counseled that any future child conceived by them at the least would be a carrier of genetic abnormalities and would likely suffer from the condition affecting Jennifer and Lisa.

The Gallaghers have sued Duke, the Private Diagnostic Clinic (the Clinic—the clinical association of Duke faculty), and Dr. Mickey in what are characterized as "wrongful life" and "wrongful birth" actions, requesting damages for the costs of maintaining Lisa Gallagher, loss of earnings, and emotional distress suffered by John and Kimberly Gallagher. The defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the plaintiffs' claims fail to state a claim upon which relief can be granted under the law of North Carolina, the law this court must apply. Duke and the Clinic have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending that an insufficient showing exists in the record to support the plaintiffs' claim that Dr. Mickey was an agent or employee of either.

## Summary Judgment

To sustain a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants must demonstrate that there is no genuine issue as to any material fact. *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.*, 381 F.2d 245 (4th Cir.1967). This is a strict standard, and any doubts as to the existence of a genuine issue of material fact are to be

resolved against the movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Not surprisingly, Duke and the Clinic differ with the plaintiffs on the questions of Dr. Mickey's employment and whether Dr. Mickey's alleged acts or omissions could create liability in them. Nonetheless, the court can only conclude that a genuine issue of material fact exists as to the questions concerning Dr. Mickey's alleged agency; and, therefore, this issue should properly be retained for resolution by the jury.

### Wrongful Birth and Wrongful Life

The court notes at the outset that throughout American legal history, courts occasionally have fallen out of step with the leaps made in science and technology. A judicial mechanism based upon case precedent, the adversary system, and, above all, reasoned thought is often slow to respond to the changes wrought on the road of the eternal march of progress. This century, as the American economic, technical, and industrial bases have evolved from a revolution of industry to one of information, courts have increasingly struggled with the ofttimes staggering impact of the changing world on the individual citizen. This is particularly true in the area of medicine. *See generally* Note, *Azzolino v. Dingfelder: North Carolina Court of Appeals Recognizes Wrongful Birth and Wrongful Life Claims*, 63 N.C. L.Rev. 1329 (1985).

This case is postured on claims of wrongful birth and wrongful life. Yet this area of the law is so new that jurisdictions have been unable to come to agreement on even a definition of these seemingly oxymoronic terms. Indeed, there is some contradiction within the State of North Carolina. The Supreme Court of North Carolina defines wrongful life as "a claim for relief by or on behalf of a defective child who alleges that but for the defendant's negligent treatment or advice to its parents, the child would not have been born." *Azzolino v. Dingfelder*, 315 N.C. 103, 107, 337 S.E.2d 528, 531 (1985). The North Carolina Court of Ap-

peals states that wrongful life is an action "generally brought by or on behalf of the impaired child." *Jackson v. Bumgardner*, 71 N.C.App. 107, 109, 321 S.E.2d 541, 543 (1984), *petition for discretionary review allowed*, 312 N.C. 797, 325 S.E.2d 486 (1985). The court takes judicial notice that oral argument in *Jackson* was heard on rehearing in the Supreme Court of North Carolina on June 9, 1986.

The court of appeals defines wrongful birth as an action "generally brought by parents of an impaired child who claim that but for the negligence of the physician or other health care provider they would not have conceived or would have terminated the pregnancy." *Id.* The supreme court uses a slightly more narrow definition. " 'Wrongful birth' refers to the claim for relief of parents who allege that the negligent treatment or advice deprived them of the choice of terminating pregnancy by abortion and preventing the birth of the defective child." *Azzolino*, 315 N.C. at 107, 337 S.E.2d at 531.

A third action, known as wrongful conception or wrongful pregnancy, involves the birth of a healthy, but unplanned child. *Jackson*, 71 N.C.App. at 109, 321 S.E.2d at 543. *See also Phillips v. United States*, 508 F.Supp. 544, 545 n. 1 (D.S.C.1981). Although not before the court today, this action is recognized as maintainable in North Carolina. *Pierce v. Piver*, 45 N.C. App. 111, 113, 262 S.E.2d 320, 321–22, *appeal denied*, 300 N.C. 198, 269 S.E.2d 618, *appeal dismissed*, 300 N.C. 375, 282 S.E.2d 228 (1980).

This is a case of first impression in North Carolina. The issue of genetic counseling makes this case unique. It appears to the court that two types of genetic counseling currently exists to serve couples in the exercise of their right to plan their families. The first is pre-conception genetic counseling. This type of counseling provides patients with information pertaining to whether they could or should conceive. Typically, such information relates to fertility and to the relative potential for conceiving a child with genetic or congenital de-

fects. *See generally Father and Mother Know Best: Defining the Liability of Physicians for Inadequate Genetic Counseling,* 87 Yale Law Journal 1488 (1978). Post-conception genetic counseling usually relates to tests conducted while the child is *in utero,* to determine if the fetus suffers from genetic defects. The most well known of these tests is amniocentesis, in which cells are removed from the sac of amniotic fluid surrounding the fetus to screen for such genetic afflictions as Tay-Sachs disease or Down's Syndrome. Post-conception genetic counseling is employed so that a mother may make an informed decision on whether to have a eugenic abortion of a deformed or otherwise genetically defective fetus. *See* Note, *Azzolino v. Dingfelder: North Carolina Court of Appeals Recognizes Wrongful Birth and Wrongful Life Claims,* 63 N.C.L.Rev. 1329–30, n. 10 (1985).

The court can find no case in North Carolina premised upon pre-conception negligence resulting in the birth of a defective child. Accordingly, the court must look to the decisions of the North Carolina Appellate Division for guidance. *See Erie R.R. Co. v. Thompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

While *Azzolino* appears to preclude the wrongful birth action, it is premised upon post-conception negligence. *Azzolino,* 315 N.C. at 110–11, 337 S.E.2d at 333–34. Further, Justice Mitchell's opinion in *Azzolino* is heavily grounded in a public policy discussion on the effect of wrongful birth on the subject of abortion. *Azzolino,* 315 N.C. at 113–14, 337 S.E.2d at 534–35. Such is not the case at bar, and this court finds *Azzolino* to be distinguishable from and inapplicable to the case *sub judice.*

■ When no controlling point of law is found at the level of the state's highest court, "then federal authorities must apply what they find to be state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The

court finds *Jackson* to provide guidance while not precisely on point. In the instant case, the child was planned, but defective. In *Jackson,* the child was healthy, but unplanned. The key in both cases is that the acts or omissions by health care providers led to conception.

The United States Supreme Court has recognized that the right of a couple, and particularly a woman, to plan for a family is an extremely important fundamental right. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Thornburgh v. American College of Obstetricians and Gynecologists,* — U.S. —, 106 S.Ct. 2169, 90 L.Ed. 779 (1986); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In North Carolina, this right is protected when a health care provider is held liable for negligently performing (or failing to perform) a requested birth control procedure. *Jackson,* 71 N.C. App. at 110, 321 S.E.2d at 544.

■ This court can only conclude, and therefore holds, that a cause of action for wrongful birth must exist in North Carolina when, as alleged herein, a health care provider negligently provides counseling and information which induces a couple to conceive a defective child.

On the issue of wrongful life, the court once again finds *Azzolino* to be distinguishable from the case at bar because its holding is based upon an allegation of post-conception negligence. Nonetheless, the court finds the dissent of Justice Martin to be persuasive. Justice Martin would have dismissed the claim of Michael Azzolino for wrongful life, not because no right of action called wrongful life existed, but because the allegedly negligent physician owed no duty to the fetus. *Azzolino,* 315 N.C. at 122, 337 S.E.2d at 539–40 (Martin, J., dissenting); *see also Gay v. Thompson,* 266 N.C. 394, 146 S.E.2d 425 (1966) (physician has duty not to negligently injure existing fetus); *but cf. Curlender v. Bio-Science Laboratories,* 106 Cal.App.3d 811, 165

Cal.Rptr. 477 (1980) (holding that genetic counselors owe a duty to an unborn and even unconceived child as well as parents). Justice Martin's observations are even more on point where, as here, the child was not even in existence *in posse*.

 Dr. Mickey was consulted by Lisa's parents. Liability for his alleged acts or omissions flows between him and the Gallaghers under the theory of wrongful birth. But Lisa was not in existence in any form at the time of the alleged negligence. Her existence was merely being contemplated. This court holds that the defendants owed no duty to Lisa regarding genetic counseling, and they cannot be found liable to Lisa.

Even though this court holds that Lisa has no cause of action for wrongful life, it does not attempt to preempt the North Carolina courts by holding that such is the law in all pre-conception cases postured as wrongful life. To do so would be contrary to the principles of federalism and the due administration of justice.

The final and perhaps most troubling issue in such cases is the damages question. While technically not before the court at this time, assessing potential damages is of extreme significance in this case. Accordingly, the court will rule on the applicable standard of damages at the final pretrial conference. The parties may file briefs on this issue if they so desire. Wherefore, based upon the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motions for summary judgment by Duke and the Clinic are DENIED. IT IS FURTHER ORDERED that the defendants' motions to dismiss the claims of plaintiffs John and Kimberly Gallagher are DENIED. Finally, IT IS ORDERED that the defendants' motions to dismiss the claim of plaintiff Lisa Gallagher are GRANTED. A Judgment reflecting this holding and dismissing this claim with prejudice will be filed contemporaneously herewith.