VARONICA L. JACKSON AND RUFUS H. JACKSON v. HEATH D. BUMGARDNER

No. 670A84

(Filed 29 August 1986)

1. **Physicians, Surgeons and Allied Professions § 11— malpractice—failure to replace IUD—birth of healthy child—sufficiency of complaint to state claim**

Plaintiff's complaint stated a claim recognizable in this state for medical malpractice where the injury complained of was defendant's improper failure to replace an intrauterine device, resulting in plaintiff wife's pregnancy and the consequent birth of a healthy child.

Jackson v. Bumgardner

**2. Physicians, Surgeons and Allied Professions § 21— malpractice—unwanted pregnancy and healthy child—items of damages—loss of consortium only damages to husband**

In a medical malpractice action where the injury complained of is an unwanted pregnancy and a healthy child, recovery of damages is limited to such costs as the hospital and medical expenses of the pregnancy, pain and suffering connected with the pregnancy, lost wages, and, where claimed, loss of consortium, but recovery may not include the costs of rearing the child, offset by the "benefits" incident to raising a normal, healthy child, since to permit recovery of child-rearing expenses would be contra to the holding and rationale of *Azzolino v. Dingfelder*, 315 N.C. 103, which is that "life, even life with severe defects, cannot be an injury in the legal sense," and since a determination of child-rearing costs offset by "benefits" would be based on speculation and conjecture. Therefore, plaintiff husband, who claimed no damages for loss of consortium, alleged no damages recoverable in this state.

**3. Contracts § 25— contract to retain or replace IUD alleged—insufficiency of complaint to state claim**

Plaintiffs' complaint failed to state a claim for breach of contract where plaintiffs alleged that defendant agreed to retain or replace an intrauterine device during the course of two surgical procedures performed by defendant, but plaintiffs' complaint showed that the contract between plaintiffs and defendant was to perform the two operations in an attempt to alleviate plaintiff wife's health problems, which defendant did; defendant's "promise" to retain or replace the IUD was merely incidental to this contract; and under the circumstances alleged in plaintiffs' complaint, defendant's failure to retain or replace the IUD after undertaking to do so would be at most negligence in the performance of his professional duties.

Justice MARTIN concurring in part and dissenting in part.

ON discretionary review of a decision of the Court of Appeals, 71 N.C. App. 107, 321 S.E. 2d 541 (1984), reversing an order by *Bailey, J.*, dismissing plaintiffs' complaint, entered at the 14 November 1983 Civil Session of Superior Court, HARNETT County. Heard in the Supreme Court 8 April 1985; reargued 9 June 1986.

*Nance, Collier, Henderson & Wheless, by James R. Nance, Jr., for plaintiff-appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, Jodee Sparkman King, and William H. Moss, for defendant-appellant.*

FRYE, Justice.

The question before this Court is whether plaintiffs' complaint states a claim recognizable in this State for medical malpractice and breach of contract where the injury complained of is defendant's improper failure to replace an intrauterine device, resulting in plaintiff wife's pregnancy and the consequent birth of a healthy child. We hold that the complaint states a recognizable claim for medical malpractice as to plaintiff wife.

In January 1979, plaintiff Varonica Jackson consulted defendant physician because she was experiencing abnormal uterine bleeding. She was admitted to Betsy Johnson Memorial Hospital on 29 January 1979 where defendant performed a D and C (dilation and curettage) and a cervical biopsy. She continued to have problems, and on 3 April 1979, defendant again operated on the plaintiff for a suspected ovarian cyst.

At the time, plaintiff wife was relying on an intrauterine device (IUD) for prevention of pregnancy. Plaintiffs allege that they could not afford to have another child, that they both discussed their situation with defendant, and that before each operation, defendant promised both of them to replace the IUD if it became necessary to remove it during the surgery. Plaintiff wife alleges that she was informed that this precaution had indeed been taken and that she continued to have the IUD's protection. On 22 July 1980, according to plaintiffs' complaint, they discovered that plaintiff wife was pregnant and that defendant had not in fact retained or replaced her IUD. The plaintiffs had a healthy baby the following February.

Plaintiffs brought suit against defendant on 22 July 1981, alleging medical malpractice and breach of contract and seeking damages for plaintiff wife's pregnancy and for the cost of rearing the new baby. Defendant answered, denying most of plaintiffs' allegations and seeking to have plaintiffs' complaint dismissed under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. After a hearing at the 14 November 1983 Civil Session of Superior Court, Harnett County, Bailey, J., dismissed plaintiffs' complaint on that basis. Plaintiffs appealed to the Court of Appeals, which reversed.

On a motion to dismiss for failure to state a claim upon which relief can be granted, N.C. R. Civ. P. 12(b)(6), all allegations of fact

are taken as true but conclusions of law are not. *See Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 333 S.E. 2d 222 (1985).

## A.

[1]   With this standard in mind, we turn first to plaintiffs' tort claim. To state a claim for medical malpractice, plaintiff must allege a breach of duty by the physician and damages proximately resulting from this breach. The scope of a physician's duty to his patient is set forth by Justice Higgins in *Hunt v. Bradshaw*, 242 N.C. 517, 521-22, 88 S.E. 2d 762, 765 (1955):

> A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient . . . . If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable.

(Citations omitted.) The first requirement is further refined by the "same or similar communities" standard and N.C.G.S. § 90-21.12. *Wall v. Stout*, 310 N.C. 184, 192 n. 1, 311 S.E. 2d 571, 577 n. 1 (1984).

The pertinent parts of plaintiffs' complaint that relate to their malpractice claim are:

> III. That at the time complained of the Defendant held himself out to skillfully practice and to follow up to date standards currently used by medical doctors practicing with [sic] the Dunn, North Carolina, area as well as the North Carolina Medical Community in general, and that he further

held himself out as a skillful practitioner in the surgical placement of intrauterine devices commonly known as IUD [sic].

IV. That on or about January 30, 1979, and at times prior thereto, the Plaintiff, VARONICA L. JACKSON, was a patient of the Defendant and that she sought out the services of the Defendant because of uterine bleeding.

. . . .

VII. That on January 29, 1979, VARONICA L. JACKSON, was admitted to Betsy Johnson Memorial Hospital and was operated on by the Defendant and as a result was given a D and C as well as a biopsy of the cervix.

VIII. The [sic] prior to the D and C being given by the Defendant, the Defendant promised that if he had to take out the intrauterine device that was already located within the Plaintiff that he would place it back within the Plaintiff, and represented to both Plaintiffs that there would be no difficulty with regard to the replacement of the intrauterine device.

IX. That thereafter in April of 1979 the Plaintiff, VARONICA L. JACKSON, continued to have problems which manifested themselves as pain in the right lower quadrant; that she again sought the services of the Defendant who again selected the hospital and staff for the performance of another operation having diagnosed her as having an ovarian cyst.

. . . .

XI. That at the time of the said operation in April, the Plaintiffs and each of them discussed with the Defendant the retention of the intrauterine device in the Plaintiff, VARONICA L. JACKSON, and that the Defendant repeatedly represented to the Plaintiffs that the intrauterine device would remain therein.

XII. That thereafter the Plaintiff was informed, believed, and alleges that she was protected from the possibility of pregnancy by the interuterine device located within her.

XIII. That therafter and on July 22, 1980, the Plaintiffs discovered that the said VARONICA L. JACKSON was pregnant

and further discovered that the intrauterine device purportedly retained in the Plaintiff had not in fact been retained.

XIV. That the Plaintiffs already had the responsibility of other children and were unable to financially bear the responsibility of additional children which facts were discussed and which were well known to the Defendant.

XV. That the Defendant was negligent in failing to warn the Plaintiffs and each of them of the removal of the intrauterine device, the failure to advise them that the intrauterine device had been removed, that she was subject to become pregnant, and that the Defendant failed to replace the intrauterine device as he had agreed to do.

XVI. That as a direct result of the negligence of the Defendant, the Plaintiff became pregnant and a child was born to the Plaintiffs in February of 1981.

XVII. That as a further result of the negligence of the Defendant and his failure to replace the intrauterine device, the Plaintiffs have been caused to suffer damages for medical expenses for the Plaintiff, VARONICA L. JACKSON, for the birth of said child, for the general cost and maintenance of said minor child from the date of his birth until such time as he shall become of legal age or emancipated, and have thus been damaged in a sum in excess of Ten Thousand and no/100 ($10,000.00) Dollars.

While plaintiff wife sought defendant's assistance for uterine bleeding, according to the complaint she also informed him that she did not want to lose the protection of the IUD as a result of his medical treatment. There are many reasons for a woman wishing to avoid pregnancy, some of which are matters of personal inclination and some of which are related to health. For some women pregnancy can create a serious and foreseeable risk of death. Whatever a woman's reason for desiring to avoid pregnancy, when a physician undertakes to provide medical care or advice to her for that purpose, he or she must provide the professional services in that case, just as in the rendering of professional services in any instance, according to the established professional standards. Just as in any other case, a failure to measure up to the established standards results in negligence which becomes actionable if the negligence proximately causes legal injury.

Applying the traditional tort principles set forth above to the allegations in plaintiffs' complaint, it is clear that the complaint alleges sufficient facts to withstand a motion to dismiss under Rule 12(b)(6) as to plaintiff wife. The complaint alleges that she consulted defendant in his professional capacity for medical treatment for uterine bleeding, that defendant undertook to treat her by performing operations on two separate occasions, and that defendant promised that her intrauterine device would be replaced, if it became necessary to remove it during the operations. These facts are sufficient to establish that plaintiff wife was defendant's patient and that he therefore owed her a legal duty. The complaint alleges that defendant completely failed to replace the IUD and further failed to warn plaintiff wife of this omission, despite the fact that he knew she relied upon it for prevention of pregnancy, had other children, did not want to become pregnant, and would suffer economic hardship if she did become pregnant. The complaint also alleges that defendant thereby breached his duty to her to exercise reasonable care and diligence in the application of his knowledge and skill in treating her. Plaintiff wife was thus left unprotected against pregnancy and unaware of her loss of protection. As a result, she became pregnant and suffered the very result that she had specifically sought defendant's professional assistance in avoiding. Plaintiff wife has therefore alleged sufficient facts to show the existence of a duty, breach of that duty, and damages resulting from the breach.

This case is one of first impression before this Court.[1] We have accordingly investigated the law in other jurisdictions to see how these jurisdictions have ruled on cases similar to the one at bar.

Confusion admittedly exists in the terminology used to describe actions in which negligence is alleged in some fashion to have resulted in pregnancy and the birth of a child. Generally speaking, however, the term "wrongful conception" or "wrongful pregnancy" has been used to describe cases similar to the instant case to distinguish them from so called "wrongful life" and "wrongful birth" cases. *See generally Miller v. Johnson*, 231 Va. 177, 343 S.E. 2d 301 (1986).

---

1. The Court of Appeals, however, has recognized a claim of this type. *See Pierce v. Piver*, 45 N.C. App. 111, 262 S.E. 2d 320 (1980).

Our survey shows that the vast majority of courts which have considered wrongful conception cases have viewed the case as being indistinguishable from an ordinary medical malpractice action where the plaintiff alleges a breach of duty on the part of a physician and resulting injury for failure to perform that duty. At least twenty-nine jurisdictions have considered the issue and have recognized a cause of action in tort.[2] Our research disclosed only one jurisdiction that currently denies a claim in tort, and that jurisdiction allows one in contract. *See Szekeres v. Robinson*, --- Nev. ---, 715 P. 2d 1076 (1986). We find both the reasoning and the results of these authorities quite persuasive.

Defendant, however, argues that this Court's recent decision in *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E. 2d 528 (1985), prevents this jurisdiction from joining the impressive list of jurisdictions recognizing a cause of action in tort for medical malpractice where the negligence of the physician results in the plaintiff's pregnancy. Defendant reads *Azzolino* as holding that all

---

2. Alabama—*Boone v. Mullendore*, 416 So. 2d 718 (Ala. 1982); Arizona—*University of Arizona v. Superior Court*, 136 Ariz. 579, 667 P. 2d 1294 (1983); Arkansas—*Wilbur v. Kerr*, 275 Ark. 239, 628 S.W. 2d 568 (1982); California—*Custodio v. Bauer*, 251 Cal. App. 2d 303, 59 Cal. Rptr. 463 (1967); Connecticut—*Foran v. Carangelo*, 153 Conn. 356, 216 A. 2d 638 (1966); District of Columbia—*Flowers v. Dist. of Columbia*, 478 A. 2d 1073 (D.C. 1984); Delaware—*Coleman v. Garrison*, 327 A. 2d 757 (Del. Super. Ct. 1974), *modified and aff'd*, 349 A. 2d 8 (Del. 1975); Florida—*Jackson v. Anderson*, 230 So. 2d 503 (Fla. Dist. Ct. App. 1970); Georgia—*Fulton-DeKalb Hosp. Authority v. Graves*, 252 Ga. 441, 314 S.E. 2d 653 (1984); Illinois—*Cockrum v. Baumgartner*, 95 Ill. 2d 193, 447 N.E. 2d 385, *cert. denied sub. nom. Raja v. Michael Reese Hosp. & Med. Center*, 464 U.S. 846, 78 L.Ed. 2d 139 (1983); Indiana—*Garrison v. Foy*, --- Ind. App. ---, 486 N.E. 2d 5 (1985); Kansas—*Byrd v. Wesley Medical Center*, 237 Kan. 215, 699 P. 2d 459 (1985); Kentucky—*Hackworth v. Hart*, 474 S.W. 2d 377 (Ky. 1971); Maine—*Macomber v. Dillman*, 505 A. 2d 810 (Me. 1986); Maryland—*Jones v. Malinowski*, 299 Md. 257, 473 A. 2d 429 (1984); Michigan—*Bushman v. Burns Medical Center*, 83 Mich. App. 453, 268 N.W. 2d 683 (1978); Minnesota—*Sherlock v. Stillwater Clinic*, 260 N.W. 2d 169 (Minn. 1977); Missouri—*Miller v. Duhart*, 637 S.W. 2d 183 (Mo. Ct. App. 1982); New Hampshire—*Kingsbury v. Smith*, 122 N.H. 237, 442 A. 2d 1003 (1982); New Jersey—*P. v. Portadin*, 179 N.J. Super. 465, 432 A. 2d 556 (1981); New York—*Weintraub v. Brown*, 98 A.D. 2d 339, 470 N.Y.S. 2d 634 (1983); North Dakota—*Milde v. Leigh*, 75 N.D. 418, 28 N.W. 2d 530 (1947); Ohio—*Bowman v. Davis*, 48 Ohio St. 2d 41, 356 N.E. 2d 496 (1976); Pennsylvania—*Speck v. Finegold*, 497 Pa. 77, 439 A. 2d 110 (1981); Tennessee—*Vaughn v. Shelton*, 514 S.W. 2d 870 (Tenn. Ct. App. 1974); Virginia—*Miller v. Johnson*, 231 Va. 177, 343 S.E. 2d 301 (1986); Washington—*McKernan v. Aasheim*, 102 Wash. 2d 411, 687 P. 2d 850 (1984); West Virginia—*James G. v. Casserta*, 332 S.E. 2d 872 (W.Va. 1985); Wyoming—*Beardsley v. Wierdsma*, 650 P. 2d 288 (Wyo. 1982).

"matters inherently incident to the creation of life . . . are . . . not cognizable damages." Because plaintiff wife's damages are all related in some fashion to her pregnancy, defendant argues that she has failed to allege any legally cognizable damages, and her claim should be dismissed accordingly.

Defendant mistakes both the nature of plaintiff wife's claim and this Court's holding in *Azzolino*.

*Azzolino* involved so-called "wrongful life" and "wrongful birth" claims. These terms are descriptive titles for claims by deformed children and their parents, respectively, against a health care provider for negligent medical treatment or advice that deprives the parents of the opportunity of deciding to abort a deformed fetus. *Azzolino*, 315 N.C. at 107, 337 S.E. 2d at 531. This Court held that the injury alleged in *Azzolino* was the continued existence of the deformed fetus. Because the Court was unwilling to recognize the existence of life, even with severe defects, as a legal injury, the Court concluded that neither wrongful birth nor wrongful life claims were cognizable in this jurisdiction. *Id.* at 108-17, 337 S.E. 2d at 532-37.

Defendant has failed to make a critical distinction between the types of claims involved in *Azzolino* and in the instant case. Mrs. Azzolino did not complain about becoming pregnant; she complained about having a child with certain defects. In reaching its result in *Azzolino*, the Court stressed the fact that defendant Dingfelder was not responsible for the existence of either little Michael Azzolino or his defects. *Id.* at 111, 337 S.E. 2d at 534. ("It should be reemphasized here that the plaintiffs only allege that the defendants negligently caused or permitted an already conceived and defective fetus not to be aborted. The plaintiffs do not allege that the defendants in any way directly caused the genetic defect. Therefore, the only damages the plaintiffs allege they have suffered arise, if at all, from the failure of the defendants to take steps which would have led to abortion of the already existing and defective fetus.") Here, what plaintiff sought was a means to avoid pregnancy itself. The injury she alleges is that she became pregnant. She also alleges that defendant's negligence contributed to her pregnancy. In arguing that plaintiff has alleged no cognizable damages under *Azzolino*, defendant is equating the condition of the pregnant plaintiff with the life of her child.

Rather, it is the fact of the pregnancy *as a medical condition* that gives rise to compensable damages and completes the elements for a claim of negligence.

In concluding that the existence of life is not a cognizable injury, *Azzolino* did not preclude recovery of damages for pregnancy *as a medical condition.* To construe *Azzolino* so broadly would run counter to the principle that for every injury there is a remedy. We do not believe that *Azzolino* requires this result.[3]

Defendant further argues that this Court should not recognize plaintiff wife's claim because a temporary method of birth control is involved. Defendant gives as his reason the fact that these methods have a higher failure rate than permanent methods and may require the active participation of the patient.

We find no rational basis for distinguishing between temporary and permanent methods of birth control for the purpose of determining whether a complaint states a cause of action for medical malpractice resulting in wrongful conception. This conclusion has support in another jurisdiction. In *Troppi v. Scarf*, 31 Mich. App. 240, 187 N.W. 2d 511 (1971), for example, plaintiffs were the parents of seven children and on the advice of their doctor decided to limit the size of their family. The doctor prescribed a contraceptive, Norinyl; however, the defendant pharmacist negligently supplied Mrs. Troppi with Nardil, a mild tranquilizer. Mrs. Troppi took the Nardil and soon thereafter became pregnant and gave birth to a healthy child. The Michgan court held that these allegations were sufficient to survive a motion to dismiss under Rule 12(b)(6). There appears to be no compelling reason to limit a patient's right to non-negligent health care to permanent sterilization procedures as opposed to the insertion of an IUD. Accordingly, we reject defendant's argument.

We wish to distinguish carefully, however, between cases like the instant case, where plaintiff alleges that defendant's negligence contributed to the pregnancy, and cases where the contraceptive method itself fails.

---

3. We note that at least one jurisdiction appears by statute to prohibit both "wrongful life" and "wrongful birth" claims but allows "wrongful conception" claims. *See* Minn. Stat. Ann. § 145.124 (Supp. 1986).

In summation, we find that plaintiff's complaint contains sufficient allegations to withstand defendant's motion to dismiss pursuant to Rule 12(b)(6) on plaintiff wife's claim for medical malpractice. We also hold that her claim is one that is recognizable in this State.

B.

[2] We turn now to the question of whether plaintiffs' complaint alleges sufficient facts to withstand a motion to dismiss as to plaintiff husband. A husband's standing to sue for physical injury to his wife is limited to a claim for loss of consortium. *Nicholson v. Hospital*, 300 N.C. 295, 266 S.E. 2d 818 (1980). Because the only claim of injury made by plaintiff husband in this case did not include a claim of loss of consortium due to his wife's injury but was related to the cost of rearing the child, we must consider what damages may be recovered in this action.

Other courts generally take one of two basic positions with respect to allowable damages in cases similar to the instant case. The majority limit recovery to such costs as the hospital and medical expenses of the pregnancy, pain and suffering connected with the pregnancy, lost wages, and where claimed, loss of consortium. *See, e.g., Miller v. Johnson*, 231 Va. 177, 343 S.E. 2d 301. A second line of cases, in addition to the above-mentioned medically related costs, have allowed recovery for the costs of rearing the child, offset by the "benefits" incident to raising a normal, healthy child. *See, e.g., Jones v. Malinowski*, 299 Md. 257, 473 A. 2d 429 (1984).

We believe the result reached by the first group to be the better one, and we hold that plaintiff wife may recover damages for the expenses associated with her pregnancy, but that plaintiffs may not recover for the costs of rearing their child. We reach this result for two reasons.

First, the decision in *Azzolino v. Dingfelder* would prohibit recovery of damages for the costs of rearing the child. In that case this Court held that "life, even life with severe defects, cannot be an injury in the legal sense." *Azzolino*, 315 N.C. at 109, 337 S.E. 2d at 532. Thus, to permit recovery of child-rearing expenses would be *contra* to both the holding and the rationale of *Azzolino*.

Second, we are persuaded by the reasoning of the Supreme Court of our sister state of Virginia, which adopts the majority

view. Applying traditional principles of tort law to the question of the proper measure of damages in wrongful conception cases, the Supreme Court of Virginia recently held that plaintiffs in such cases could recover such directly resulting damages as "medical expenses, pain and suffering, and lost wages for a reasonable period . . . . The mother is also entitled under the general rule to recover damages, if proven, for emotional distress causally resulting from the tortiously caused physical injury." *Miller v. Johnson,* 231 Va. at 184, 343 S.E. 2d at 305. But considering the question of recovery for expenses of rearing a healthy child, the court said:

> Juries may routinely determine the damages resulting from a life that has been terminated or permanently injured. But even those courts that allow recovery of damages for the expenses of child-rearing concede the difficulty of determining the value of the offsetting benefits from the child's life. *See, e.g., Troppi,* 31 Mich. App. at 261, 187 N.W. 2d at 521. Nevertheless, they are willing to impose this burden on juries. We are unwilling to do so because of our conclusion that the results would necessarily be based on speculation and conjecture. Who, indeed, can strike a pecuniary balance between the triumphs, the failures, the ambitions, the disappointments, the joys, the sorrows, the pride, the shame, the redeeming hope that the child may bring to those who love him?

*Id.* at 184, 343 S.E. 2d at 307. *See also McKernan v. Aasheim,* 102 Wash. 2d 411, 419-20, 687 P. 2d 850, 855 (1984).

We therefore conclude that plaintiff husband's claim must fail because he has alleged no damages recoverable in this State.

While we have applied traditional tort principles in recognizing the validity of plaintiff wife's medical malpractice claim and in limiting the scope of damages, we are not unmindful of the legislature's role in fashioning remedies in accordance with public policy. As with other claims, the legislature in its wisdom may choose to limit or expand or otherwise redefine the basis of recovery.

C.

We turn now to plaintiff's contract claim.

[3]   If a physician undertakes to treat a patient, that physician is generally liable for damages resulting from the negligent performance of his or her duties on the tort theory of malpractice, regardless of the availability of other theories of recovery. *See, e.g., Maercklein v. Smith,* 129 Colo. 72, 266 P. 2d 1095 (1954) (doctor performed vasectomy instead of circumcision, and patient sued for battery; when doctor raised as defense a one year statute of limitations, court held that doctor's acts could also amount to negligence, with a longer period of limitations). Accordingly, when the alternative available theory is breach of an underlying contract of employment, most jurisdictions treat the plaintiff's claim as one "essentially tortious in its nature," but hold that "the tort may be waived, allowing a suit in assumpsit." 61 Am. Jur. 2d Physicians and Surgeons § 311 (1981).

Because a physician does not ordinarily insure the success of his treatment, *Lentz v. Thompson,* 269 N.C. 188, 152 S.E. 2d 107 (1967), some jurisdictions that otherwise do not allow suits for breach of contract against physicians will allow such suits when the physician entered into a "special contract" to cure or to obtain a specific result,[4] *e.g., Monroe v. Long Island College Hospital,* 84 A.D. 2d 576, 443 N.Y.S. 2d 433 (1981) (stating New York's current position). At least one commentator is of the opinion that the rule in these jurisdictions, that no suit for breach of contract may be brought against a physician unless it is for breach of a "special contract" to cure or obtain a specific result, is the universal rule. *See* Note, *Medical Malpractice: Contract or Tort: The Vermont Statute of Frauds,* 10 Vt. L. Rev. 99 (1985). However, the rule is not in fact universal. *See Zostautas v. St. Anthony De Padua Hospital,* 23 Ill. 2d 326, 178 N.E. 2d 303 (1961) (same transaction may give rise to both tort and contract causes of action, and actions arising by virtue of medical malpractice are on no different footing than other types of actions); *Stewart v. Rudner,* 349 Mich. 459, 84 N.W. 2d 816 (1957) (contract action allowed where wife, whose earlier pregnancies had resulted in a miscarriage and a stillbirth, contracted with physician for delivery by Caesarian section; physician instead allowed a vaginal delivery that the infant failed to survive, exactly as wife had feared)

---

4. The classic example of such a contract is found in *Hawkins v. McGee,* 84 N.H. 114, 146 A. 641 (1929) ("Hairy Hand" case) (doctor warranted to give patient a "perfect hand" as the result of a skin graft).

(cited approvingly by this Court in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979)).

Our research has disclosed only three reported cases in North Carolina involving breach of contract claims against physicians and dentists in their professional capacity. *See Progner v. Eagle*, 377 F. 2d 461 (4th Cir. 1967) (involving North Carolina law); *Preston v. Thompson*, 53 N.C. App. 290, 280 S.E. 2d 780, *cert. denied*, 304 N.C. 392, 285 S.E. 2d 833 (1981); and *Pierce v. Piver*, 45 N.C. App. 111, 262 S.E. 2d 320 (1980) (all three involving warranties as to the outcome of treatment). The legislature has mandated that plaintiffs show a writing to prove a warranty, guarantee or assurance as to the result of medical treatment or services. N.C.G.S. § 90-21.13(d) (1985). *See also Preston v. Thompson*, 53 N.C. App. 290, 280 S.E. 2d 780, *cert. denied*, 304 N.C. 392, 285 S.E. 2d 833. However, this Court has apparently never been presented with the question of whether to allow a patient to maintain a breach of contract action against a physician.

Defendant in the instant case argues that the contract that plaintiffs allege they made with him is an assurance as to the result of treatment, barred by N.C.G.S. § 90-21.13(d) because plaintiffs do not allege a writing. Alternatively, he urges this Court to extend the statute's coverage to all contracts between patient and physician.

However, examination of plaintiff's complaint discloses that we need not reach defendant's contentions regarding the statute because plaintiffs' claim for breach of contract fails upon a more elemental basis. The pertinent parts of plaintiffs' complaint that relate to their contract are:

> I. That the Plaintiffs reiterate and replead paragraphs I through XVII as fully and completely as if said paragraphs were set forth verbatim and the same are incorporated herein by reference.
>
> II. That the Plaintiffs contracted with the Defendant for the replacement of the intrauterine device and that the failure of the Defendant to replace the intrauterine device constitutes a breach of said oral contract and agreement and that as a result thereof the Plaintiffs have been caused to suffer damages for medical expenses and expenses for the

maintenance, support, and education of the minor child born to the Plaintiffs in a sum in excess of Ten Thousand and no/100 ($10,000.00) Dollars.

Contracts are to be considered as a whole. The heart of the contract is the intent of the parties, which must be determined from the language of the contract and its character, objects, and purpose. *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E. 2d 190 (1975); *Stanley v. Cox*, 253 N.C. 620, 117 S.E. 2d 826 (1961). Although plaintiffs allege in paragraph II of their second cause of action that they contracted with defendant for the replacement of the intrauterine device, an examination of paragraphs I through XVI of the complaint, repleaded in plaintiffs' second cause of action, discloses that there was no such contract. Plaintiff wife sought defendant's services initially because of uterine bleeding (paragraph IV), and later for abdominal pain (paragraph IX). It was for these problems that defendant actually treated her, first by performing a D and C and, later, surgery for a suspected ovarian cyst (paragraphs VII and IX). Plaintiffs also allege in paragraphs VIII and XI that before each operation, defendant "promised" to retain or replace plaintiff wife's IUD. Taken as a whole with due regard for its character, objects and purpose, the contract between plaintiffs, or plaintiff wife, and defendant was to perform the two operations in an attempt to alleviate plaintiff wife's health problems, which defendant did. Defendant's "promise" to retain or replace the IUD was merely incidental to this contract. Viewed in context, it is clear that defendant never intended to be contractually bound by the "promise." There was thus no contract to retain or replace the IUD for defendant to breach. Under the circumstances alleged in plaintiffs' complaint, defendant's failure to retain or replace the IUD after undertaking to do so would be at most negligence in the performance of his professional duties, as was discussed earlier in this opinion. Since plaintiffs' complaint shows on its face that they are not entitled to recover for breach of contract, dismissal of this cause of action under Rule 12(b)(6) was entirely proper on that ground.

To summarize, we hold the following:

1) plaintiffs' complaint states a claim upon which relief may be granted for medical malpractice recognizable in this State and sufficient for plaintiff wife to withstand defend-

ant's motion to dismiss pursuant to Rule 12(b)(6), but the allegations in the complaint are not sufficient for plaintiff husband to withstand this motion with respect to a malpractice claim;

2) plaintiff wife may not recover damages for the cost of rearing her child; and

3) plaintiffs' complaint fails to state a claim upon which relief may be granted for breach of contract.

Therefore, for all of the reasons discussed herein, the decision of the Court of Appeals reversing the trial judge's order dismissing both of plaintiffs' claims pursuant to Rule 12(b))6) is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

Justice MARTIN concurring in part and dissenting in part.

I concur in the holding by the majority that the complaint states a cause of action for medical malpractice by Varonica Jackson.

I dissent from the majority's failure to recognize the cause of action of Rufus Jackson for medical malpractice and the plaintiffs' cause of action based on contract. Further, I am of the opinion that the Court should not have addressed the damage issue on the bare record of the pleadings, and that having done so, the majority adopted a standard contrary to settled common law principles.

In order to properly resolve the issues before us, I find it appropriate to review some of the legal background affecting the questions presented to us by this appeal. The Supreme Court of the United States has recognized the right of couples to practice contraception as being protected by the right of privacy under the Bill of Rights to the United States Constitution. See *Griswold v. Connecticut*, 381 U.S. 479, 14 L.Ed. 2d 510 (1965) (married couples); *Eisenstadt v. Baird*, 405 U.S. 438, 31 L.Ed. 2d 349 (1972) (unmarried couples). The Court found the right of privacy to be older than the Bill of Rights. *See also* Griswold, *The Right to be Let Alone*, 55 Nw. U. L. Rev. 216 (1960). The Constitution of North Carolina likewise protects the right of privacy. N.C. Const.

art. I, Declaration of Rights. *See State v. Poe*, 40 N.C. App. 385, 252 S.E. 2d 843, *disc. rev. denied*, 298 N.C. 303 (1979). "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." N.C. Const. art. I, § 35.

From the above, it follows that a husband and wife have the right to plan their family and to determine, within their abilities, whether and when they will have a child. *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441, 314 S.E. 2d 653 (1984); *Cockrum v. Baumgartner*, 99 Ill. App. 3d 271, 425 N.E. 2d 968 (1981), *rev'd on other grounds*, 95 Ill. 2d 193, 447 N.E. 2d 385, *cert. denied sub nom. Raja v. Michael Reese Hospital*, 464 U.S. 846, 78 L.Ed. 2d 139 (1983). *See generally* Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant*, 68 Va. L. Rev. 1311 (1982).

As set forth above, the right of *married couples* to practice contraception is protected by the United States Constitution. *Griswold*, 381 U.S. 479, 14 L.Ed. 2d 510. Although the physical injury in this case was inflicted upon the wife, defendant's negligence violated the husband's constitutional right as to contraception. Defendant's negligence proximately resulted in harm to both plaintiffs, not the wife alone as stated by the majority.

Here, plaintiffs have not alleged loss of consortium but seek only recovery of certain expenses incurred as a result of Mrs. Jackson's pregnancy and the child's birth. *Pierce v. Piver* upheld sub silentio the right of the father to assert a claim based upon negligence of a doctor resulting in an unplanned pregnancy of his wife. 45 N.C. App. 111, 262 S.E. 2d 320, *disc. rev. allowed*, 300 N.C. 198, *appeal dismissed*, 300 N.C. 375 (1980) (after discretionary review was allowed the parties to this litigation settled the dispute and the appeal was thereupon dismissed). Other jurisdictions have recognized the father's standing to sue in wrongful conception and wrongful birth cases. *See, e.g., Robak v. United States*, 658 F. 2d 471 (7th Cir. 1981) (wrongful birth); *Phillips v. United States*, 508 F. Supp. 544 (D.S.C. 1981); *Ochs v. Borrelli*, 187 Conn. 253, 445 A. 2d 883 (1982); *DiNatale v. Lieberman*, 409 So. 2d 512 (Fla. Ct. App. 1982) (wrongful birth); *Troppi v. Scarf*, 31 Mich. App. 240, 187 N.W. 2d 511 (1971); *Sherlock v. Stillwater Clinic*, 250 N.W. 2d 169 (Minn. 1977) (wrongful conception); *Kingsbury v. Smith*, 122 N.H. 237, 442 A. 2d 1003 (1982) (wrongful conception).

*See* Annot., *Medical Malpractice, and Measure and Element of Damages, in Connection With Sterilization or Birth Control Procedures,* 27 A.L.R. 3d 906, §§ 3[a], 4[a], 5[a] (1969 & Supp. 1986). Although Mr. Jackson was not being medically treated by defendant, the complaint alleges that he, along with Mrs. Jackson, discussed their desire to have the IUD replaced in Mrs. Jackson, and defendant repeatedly represented to Mr. Jackson that the device would be so retained. In addition to the allegations of defendant's negligence, plaintiffs' complaint is based upon allegations of defendant's breach of an express contract with plaintiffs. Plaintiffs allege that defendant totally failed to perform his obligations under the terms of the contract with plaintiffs. I conclude that a cause of action has been stated on behalf of Mr. Jackson: he relied upon defendant's exercising reasonable care in retaining the IUD in Mrs. Jackson; he was responsible for the payment of the charges for defendant's services; he was affected emotionally and financially by the conception and birth of the child. N.C.G.S. § 50-13.4(b) (1984). That Mr. Jackson would be damaged by the negligent failure of defendant to reinsert the IUD was reasonably foreseeable. *See Hairston v. Alexander Tank & Equipment Co.,* 310 N.C. 227, 311 S.E. 2d 559 (1984). Moreover, to forbid the husband the opportunity to recover for the injury done to him violates his right to "have remedy by due course of law." N.C. Const. art. I, § 18.

The better practice would be to allow the trial court in the first instance to address the issue of what damages are recoverable. The appellate division would then have a full evidentiary record upon which to make a proper analysis as to damages rather than attempting to formulate an abstract rule. The majority has decided damage issues that have not been presented to us upon an evidentiary record and which may never be so presented. Sound judicial discipline would dictate withholding such momentous decisions until all available evidence and arguments can be presented to the Court. Precipitous judgments are to be avoided.

Nevertheless, the majority has plunged ahead and attempted to formulate a special rule of damages in this case. Although the majority relied upon common law principles in determining a cause of action had been alleged, it abandoned that safe harbor in embarking upon a voyage to seek a rule of damages. I write briefly in dissent. The majority has devised a special rule of damages

for the benefit of doctors faced with malpractice claims involving the concept of wrongful pregnancy. Defendant doctors should not have a special rule of damages in this type of medical malpractice case. As the Supreme Court of Wyoming said in recognizing a wrongful conception claim, "[a] ruling denying any damages to appellants would render the medical profession immune from liability for negligent treatment of patients seeking to limit the size of their families." *Beardsley v. Wierdsma*, 650 P. 2d 288, 292 (1982). Under settled common law principles of this state, a defendant is responsible for all damages that proximately result from his negligence. Certainly damages should not be eliminated because of difficulty of proof.

If a rule must be formulated at this time, the Court would be well served by sticking with basic common law rules of damages. Such rules allow plaintiffs to recover all damages that proximately flow from defendant's negligence, including, but not limited to, costs of the childbirth, pain and suffering of Varonica Jackson accompanying the childbirth, mental anguish, and the costs of rearing the child, subject to a deduction or setoff for the value of benefits received by the plaintiffs by having the healthy child. Restatement (Second) of Torts § 920 (1979); *Stills v. Gratton*, 55 Cal. App. 3d 698, 127 Cal. Rptr. 652 (1976); *Ochs v. Borrelli*, 187 Conn. 253, 445 A. 2d 883; *Anonymous v. Hospital (1976-11)*, 33 Conn. Supp. 125, 366 A. 2d 204 (1976); *Green v. Sudakin*, 81 Mich. App. 545, 265 N.W. 2d 411 (1978); *Troppi v. Scarf*, 31 Mich. App. 240, 187 N.W. 2d 511; *Sherlock v. Stillwater Clinic*, 260 N.W. 2d 169. The expenses incurred in caring for and rearing a child whose conception was a proximate result of defendant's negligence is certainly a foreseeable result of defendant's negligence and a compensable injury for which defendant is liable in damages. *See, e.g., Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E. 2d 541 (1964) (once breach of duty is proved, defendant is liable for *all* damages suffered by plaintiff, "notwithstanding the fact that these damages were unusually extensive").

The majority mistakenly relies upon *Azzolino* to prohibit recovery of damages for the costs of rearing a child. The statement in *Azzolino* relied upon by the majority was made with respect to the claim of little Michael Azzolino for "wrongful life." It does not apply to the issue of "wrongful pregnancy" or "wrongful conception," which is the shorthand description of the cause

before the Court at this time. *Azzolino* is further distinguished from our present case in that the negligence in *Azzolino* occurred *after* pregnancy, whereas here the negligence of defendant occurred *before* and actually was a proximate cause of the pregnancy. The federal court for the Middle District of North Carolina made such a distinction in *Gallagher v. Duke University*, 638 F. Supp. 979 (M.D.N.C. 1986).

Finally, with respect to the contract claim, I find that the allegations are sufficient to survive the Rule 12(b)(6) motion. Merely because the contract claim includes by reference the allegations of negligence is not a sufficient basis to deny the contract action. A plaintiff may allege inconsistent causes of action. Defendant relies solely upon N.C.G.S. § 90-21.13(d). Defendant's reliance upon the statute is misplaced. Here, plaintiffs do not allege that defendant guaranteed, warranted, or made an assurance as to the result of the medical treatment. They do not allege that defendant guaranteed in any fashion that Mrs. Jackson would not become pregnant. Plaintiffs allege that defendant totally failed to do that which he promised to do — maintain the IUD in Mrs. Jackson's body. The statute is not applicable to plaintiffs' alleged contractual claim.

The majority purports to hold that "defendant never intended to be contractually bound by the 'promise'" to replace Varonica's IUD. That could be a possible holding upon a summary judgment hearing or upon a motion for directed verdict under N.C.R. Civ. P. 50(a). We are reviewing a ruling on a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(6). We are only concerned with the pleadings. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Pleadings are to be liberally construed. Under the theory of notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim to enable defendant to answer and prepare for trial, to allow the application of res judicata, and to show the type of case brought. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Plaintiffs' complaint alleges that before each of the medical procedures defendant represented to both plaintiffs that the IUD would be retained or replaced within Varonica and defendant failed to comply with his representation. The complaint was sufficient to allow defendant to answer and he has done so. It has been sufficient to allow defendant to prepare for trial, it will support the doctrine of res judicata, and

it shows that it is an action for damages for breach of contract. The complaint complies with the requirements of *Sutton v. Duke*. Of course, as the majority concedes, the failure to replace the IUD could constitute negligence on the part of the defendant. That does not exclude the alternative remedy that the actions alleged could also support an action for breach of contract.

It is to be remembered that the law of contracts is to be applied to the relationship between physician and patient. This is particularly true where there is a specification as to what the physician shall do. *See Kennedy v. Parrott*, 243 N.C. 355, 90 S.E. 2d 754 (1956). So it is here. Plaintiffs have stated a proper cause of action based upon breach of contract.