GLENN W. JOHNSON, ADMINISTRATOR OF THE ESTATE OF JAMES WAYLAND JOHNSON AND BARBARA K. JOHNSON AND GLENN W. JOHNSON v. RUARK OBSTETRICS AND GYNECOLOGY ASSOCIATES, P.A. (FORMERLY THE RUARK CLINIC, P.A.), L. JOSEPH SWAIM, THOMAS B. GREER, WARNER L. HALL, AND COURTNEY D. EGERTON

No. 8610SC942

(Filed 15 March 1988)

**1. Rules of Civil Procedure § 12— only pleadings in record—standard applicable to judgment on the pleadings**

Where the trial court's order indicated that the court had considered discovery materials in dismissing plaintiffs' claims, but the record on appeal contains only the parties' unverified pleadings and defendants have not shown that plaintiffs were required under Rule 56(e) to respond with specific facts showing a genuine issue for trial, the adequacy of plaintiffs' allegations will be judged by the standards appropriate to a judgment on the pleadings rather than by the standards applicable to summary judgment. N.C.G.S. § 1A-1, Rule 12(b)(6).

**2. Death § 3— action for wrongful death of fetus—decision retroactive**

The decision in *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E. 2d 489 (1987), permitting an action for the wrongful death of a viable fetus will be applied retroactively to an action commenced before the date of that decision.

**3. Death § 3— wrongful death of "viable" fetus—sufficiency of complaint**

Plaintiffs stated a claim under N.C.G.S. § 28A-18-2 for the wrongful death of a "viable" fetus where they alleged that defendant physicians negligently caused the stillbirth of a forty-week-old fetus by failing to treat plaintiff mother's diabetic condition at any time prior to the stillbirth.

**4. Damages § 3.4; Negligence § 1.1— emotional distress from injuries to others— no absolute prohibition of recovery—public policy limitations—remoteness**

While there is no longer an absolute prohibition of any recovery for the negligent infliction of emotional distress caused by concern for another, the trial judge may be required to weigh public policy limitations on negligence liability in deciding whether a plaintiff's injuries were too remote as a matter of law to be foreseen by the tort-feasor.

**5. Damages § 3.4; Negligence § 1.1— emotional distress—sufficient allegation of physical injury**

Plaintiff mother sufficiently alleged a physical injury to herself to support her claim for negligently inflicted emotional distress arising from the death of a viable fetus where she alleged that her own diabetes remained untreated by defendant physicians and that the fetus attached to her body died of malnutrition from defendants' failure to treat her diabetes, since the physical injury to the fetus was also a physical injury to plaintiff mother.

**6. Damages § 3.4; Negligence § 1.1— mental anguish from death of fetus—claim not barred by peril to another rule**

Plaintiff mother's claim for the negligent infliction of emotional distress arising from the death of a fetus could not properly be dismissed by the trial court on the ground that it involved emotional distress caused by concern for another since (1) a fetus physically connected to the mother is not "another" person for purposes of the peril to another rule, and (2) the mother's distress at the death of her fetus is not "remote" simply because the fetus may have reached a biological stage which renders it a legal "person" for purposes of the wrongful death statute.

**7. Damages § 3.4— claim for emotional distress—sufficient allegation of physical injury**

Plaintiff father's allegation that he suffered emotional and mental distress from the death of a fetus adequately alleged the element of physical injury required in order to avoid dismissal of his claim for the negligent infliction of emotional distress.

**8. Damages § 3.4— death of fetus—father's claim not barred by public policy**

Plaintiff father's claim for the negligent infliction of emotional distress from the death of a fetus was not too remote or unforeseeable to permit recovery as a matter of public policy.

**9. Damages § 3.5— damages for emotional distress**

In an action for the negligent infliction of emotional distress arising from the death of a fetus, costs associated with medical care and lost wages arising throughout the mother's pregnancy which exceeded the administrator's possible recovery under the wrongful death statute are compensable only in connection with the mother's injuries since the father's emotional injuries arose only at the end of the pregnancy. Furthermore, since the mother also alleged she was injured by the failure of defendant physicians to treat her diabetes, she is entitled to prove she incurred these other damages apart from her claim for emotional distress.

APPEAL by plaintiffs from *Bailey (James H. Pou), Judge*. Order entered 29 May 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 4 February 1987.

*Lawrence, Evans & Mazer, by Steven L. Evans, for plaintiff-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson and William H. Moss, for defendant-appellees.*

GREENE, Judge.

Plaintiffs alleged the individual physician-defendants, formerly practicing as the Ruark Clinic, P.A., negligently caused the

stillborn birth of their forty-week-old fetus. Plaintiffs sought recovery for the wrongful death of their child, for their individual emotional distress, and for certain compensatory and punitive damages. Plaintiffs specifically alleged defendants' failure to treat Mrs. Johnson's diabetic condition caused their infant to die *in utero* of malnutrition. The court granted defendants' motion to dismiss those claims. Although defendants' motion and the court's order are both styled under summary judgment, the record on appeal contains only plaintiffs' and defendants' unverified pleadings. However, the trial court cited its review of the pleadings, briefs and "discovery materials" in dismissing all of plaintiffs' claims. Plaintiffs appeal.

The trial court's dismissal of these claims presents the following issues: I) whether the adequacy of plaintiffs' allegations should be judged by the standards appropriate to summary judgment or instead by those standards appropriate to a judgment on the pleadings; II) where plaintiff administrator alleged defendants' negligence caused the wrongful death *in utero* of his forty-week-old fetus, whether (A) plaintiff stated a claim under N.C.G.S. Sec. 28A-18-2 (1984 and Supp. 1985) for (B) the wrongful death of a "viable" fetus; III) whether the trial court properly dismissed the individual claims of (A) the mother and (B) the father for negligently inflicted emotional distress arising from the fetus's death; and IV) whether plaintiffs may recover increased medical expenses, funeral expenses and all costs associated with medical care and lost wages arising throughout the mother's pregnancy.

I

[1]   Plaintiffs argue in their brief that the trial court's dismissal should be treated as a dismissal under N.C.G.S. Sec. 1A-1, Rule 12(b)(6) (1983) since "the total information available to the court at the time of the hearing was the unsworn complaint and unsworn answer." We note defendant-appellees' brief nowhere responds to plaintiffs' charge that only the pleadings were before the court. However, the record twice evidences the apparent existence of unspecified "discovery" materials: 1) the "Motion of Defendants for Summary Judgment" requested judgment based on "the pleadings, *discovery* and the record" and 2) the court's order granting summary judgment states the court had reviewed "the

pleadings, *discovery materials* and defendants' briefs . . ." (emphasis added). Since the only specific materials in the record on appeal indicate the trial court considered matters outside the pleadings, we cannot assume that the trial court limited its review to the pleadings in dismissing plaintiffs' complaint.

However, as defendants have not included any such "discovery materials" in the record, we cannot "carefully scrutinize" them to determine whether they support defendants' burden of "clearly establishing the lack of any triable issue of fact by the record properly before the court." *Page v. Sloan*, 281 N.C. 697, 704, 190 S.E. 2d 189, 195 (1972). Absent these discovery materials in the record, we are unable to determine whether "reasonable men could reach different conclusions on the evidentiary materials offered by defendants to support their motion for summary judgment." *Id.* at 708, 190 S.E. 2d at 195. As there is nothing in the record actually supporting defendants' motion other than their unverified pleadings, we thus cannot conclude that plaintiffs were required under Rule 56(e) to respond with any "specific facts" showing a genuine issue for trial. N.C.G.S. Sec. 1A-1, Rule 56(e) (1983) (non-movant risks dismissal if rests on allegations where motion "supported" as provided under rule); *see Coleman v. Shirlen*, 53 N.C. App. 573, 577, 281 S.E. 2d 431, 434 (1981) (where record did not reflect adequate support on material issues for defendant-movant, appellate court not required to determine whether plaintiff produced specific facts in response); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 2d 142 (1970) (under identical federal Rule 56(e), supporting affidavits must be in record to be considered by appellate court); J. Moore and J. Wicker, *Moore's Federal Practice* Sec. 56.15[7] (2d ed. 1987) (record must show no genuine issue of material fact).

Therefore, since defendants have not shown plaintiffs were required under Rule 56(e) to respond with specific facts and as the record otherwise reveals only the parties' unverified pleadings, the adequacy of plaintiffs' pleadings shall be judged by those standards appropriate to a judgment on the pleadings. *See Burton v. Kenyon*, 46 N.C. App. 309, 310, 264 S.E. 2d 808, 809 (1980) (where record on appeal contained only pleadings on which to base decision, court treated summary judgment motion as motion on pleadings); *Reichler v. Tillman*, 21 N.C. App. 38, 40, 203 S.E. 2d 68, 70 (1974). Accordingly, we are

required to view the facts and permissible inferences in the light most favorable to the non-moving party. All well-pleaded factual allegations in the non-moving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E. 2d 494, 499 (1974) (citations omitted).

## II

### A

A claim for wrongful death under Section 28A-18-2 is ordinarily allowed "[w]hen the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor . . . ." N.C.G.S. Sec. 28A-18-2(a) (1984). At the time the trial court dismissed this wrongful death claim, the courts of this state held a stillborn fetus was *not* a "person" whose personal representative could sue for the fetus's wrongful death under Section 28A-18-2(a). *E.g., Cardwell v. Welch*, 25 N.C. App. 390, 393, 213 S.E. 2d 382, 384, *cert. denied*, 287 N.C. 464, 215 S.E. 2d 623 (1975) (based on court's construction of legislative intent); *accord Yow v. Nance*, 29 N.C. App. 419, 420, 224 S.E. 2d 292, 293, *disc. rev. denied*, 290 N.C. 312, 225 S.E. 2d 833 (1976); *see also Gay v. Thompson*, 266 N.C. 394, 402, 146 S.E. 2d 425, 431 (1966) (action denied since applicable version of statute only allowed "pecuniary" damages which court held too "speculative" when incurred prenatally).

[2]    However, in *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E. 2d 489 (1987), our Supreme Court noted Section 28A-18-2 had been amended to allow non-pecuniary damages. Thus distinguishing its decision in *Gay*, the Court overruled *Cardwell* and *Yow* and instead held:

> The language of our wrongful death statute, its legislative history, and recognition of the statute's broadly remedial objectives compel us to conclude that the uncertainty in the

meaning of the word 'person' [in Section 28A-18-2(a)] should be resolved in favor of permitting an action to recover for the destruction of a *viable* fetus *en ventre sa mere*.

*Id.* at 430, 358 S.E. 2d at 493 (emphasis added); *accord Ledford v. Martin*, 87 N.C. App. 88, 89, 359 S.E. 2d 505, 506 (1987). Although the instant action commenced before *DiDonato* was decided, we see no compelling reason why the Court's holding should not be applied retroactively to this case. *See generally Cox v. Haworth*, 304 N.C. 571, 573-76, 284 S.E. 2d 322, 324-26 (1981) (decisions are presumed retroactive unless contrary compelling reason).

As is customary, the trial court gave no specific basis for dismissing the instant wrongful death claim. However, insofar as the trial court's dismissal was based on those decisions denying representatives of a stillborn fetus the remedy of Section 28A-18-2, that basis is meritless after *DiDonato*.

B

The *DiDonato* Court extended the purview of the wrongful death remedy only to "the death of a *viable* fetus." *DiDonato*, 320 N.C. at 434, 358 S.E. 2d at 495 (emphasis added). If the pleadings in this case disclose as a matter of law that plaintiffs' intestate was not "viable" under *DiDonato*, then the trial court's dismissal of the wrongful death claim must be affirmed.

In its discussion of "viability," the *DiDonato* Court noted a preamble to an amendment of the statute "indicates that for purposes of the wrongful death statute, a 'person' is someone who possesses 'human life.' " *Id.* at 427, 358 S.E. 2d at 491. The Court then stated:

A viable fetus, whatever its legal status might be, is undeniably alive and undeniably human. *It is, by definition, capable of life independent of its mother. A viable fetus is genetically complete and can be taxonomically distinguished from non-human life forms*. Again, this is some evidence that a viable fetus is a person under the wrongful death statute.

*Id.* at 427-28, 358 S.E. 2d at 491-92 (emphasis added). Of course, a fetus's capability to live independently of the mother is the long-established common law definition of viability. *See, e.g.*, Black's Law Dictionary 1737 (4th ed. 1968) (defining viability as denoting

power of continuing independent existence); *see also* Comment, *Wrong Without a Remedy—North Carolina and the Wrongful Death of a Stillborn,* 9 Campbell L. Rev. 93, 122 n. 189 (1986) (collecting similar definitions of "viable").

However, the *DiDonato* Court also stated that a "viable" fetus is "genetically complete" and "can be taxonomically distinguished from non-human life forms." Given the unique genetic structure of each species, the fetuses of all species are arguably not only genetically complete, but also taxonomically distinguishable from other species, at conception; however, we note the references to these concepts occur in connection with the Court's analysis of whether a fetus possesses "human life" as that phrase was used in the preamble to the amended version of the statute. *DiDonato,* 320 N.C. at 427, 358 S.E. 2d at 491. Rather than more specifically defining "viability," the *DiDonato* Court's references to genetic completeness and taxonomic distinctiveness merely express the Court's restricting the class of "persons" under the statute to those who are "undeniably alive and undeniably human." *Id.*

[3] We therefore conclude the definition of "viability" intended by the *DiDonato* Court is simply the common law definition of fetal capability to live independently of the mother. Although there is apparently no clear medical consensus as to the specific gestational age at which this capability is currently achieved, a gestational range of twenty to twenty-six weeks has been suggested. *See generally* Comment, 9 Campbell L. Rev. at 124; *cf. Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed. 2d 788 (upholding statute defining "viability" as stage of fetal development when life may be continued indefinitely outside womb by natural or artificial means; Court rejected argument that specific gestational age required). However, as the determination of a fetus's viability is a question of fact, we cannot ourselves determine as a matter of law the viability of the Johnson fetus. As the United States Supreme Court stated in *Danforth:*

> [I]t is not the proper function of the legislature or the courts to place viability, which is essentially a medical concept, at a specific point in the gestational period. The time when viability is achieved may vary with each pregnancy . . . .

428 U.S. at 64, 49 L.Ed. 2d at 802.

In addition to alleging the death of a viable fetus entitling them to sue under Section 28A-18-2, plaintiffs must allege facts showing defendants breached a duty to the fetus such that "the decedent could have maintained an action for negligence or some other misconduct if he had survived." *DiDonato*, 320 N.C. at 426, 358 S.E. 2d at 491; *see also Harris v. Wright*, 268 N.C. 654, 658, 151 S.E. 2d 563, 566 (1966) (representative must allege defendant breached some duty owed decedent under circumstances). Of course, the *DiDonato* interpretation of the wrongful death statute would be futile if no duties are owed to any infants *in utero. See Ledford*, 87 N.C. App. at 91, 359 S.E. 2d at 507 (stating physician owes duty of care to both pregnant mother and fetus); *cf. Azzolino v. Dingfelder*, 315 N.C. 103, 108, 337 S.E. 2d 528, 532 (1985) (Court merely assumed duty to fetus *arguendo*).

We note that some portion of defendants' alleged negligence necessarily occurred after fetal viability was purportedly achieved since defendants' failure to treat the diabetic condition of the  mother continued until the fetus reached forty weeks of gestational age—far longer than the suggested 20-26 week period mentioned earlier. At the least, plaintiffs have therefore sufficiently alleged defendants breached a duty owed their fetus *after* it had become viable. Accordingly, we need not determine whether defendants owed a duty to this fetus *prior* to its achieving viability or whether its achieving "viability" is merely a condition precedent to suit under Section 28A-18-2. *See Stam v. State*, 47 N.C. App. 209, 216, 267 S.E. 2d 335, 341, *aff'd*, 302 N.C. 357, 275 S.E. 2d 439 (1981) (former "live birth" requirement was "condition precedent" to exercise of property rights acquired by unborn child); *Cardwell*, 25 N.C. App. at 393, 213 S.E. 2d at 384 (allowing action when child viable at time of death but no action if child not viable at time of injury "does not solve but merely relocates the problem"); *see also Mackie v. Mackie*, 230 N.C. 152, 155, 52 S.E. 2d 352, 354 (1949) (legal personality is fiction imputed to unborn child for beneficial, but not detrimental, purposes; property interest taken at birth relates back to conception); *cf.* Note, *Azzolino v. Dingfelder: North Carolina Court of Appeals Recognizes Wrongful Birth and Wrongful Life Claims*, 63 N.C.L. Rev. 1329, 1329 (1985) (fetus to whom Court assumed duty was first-trimester and thus presumably pre-viable).

Thus, given the apparent state of current medical capability and the ongoing nature of defendants' alleged failure to treat Mrs. Johnson's diabetes, plaintiffs' pleadings disclose no fact which would as a matter of law prohibit their proving defendants breached a duty of care to this fetus. We therefore reverse the summary dismissal of plaintiffs' wrongful death claim.

## III

In their individual capacities, both parents claim damages arising from: (1) the alleged emotional distress of "enduring the labor with the knowledge that their unborn child was dead, and the delivery of a dead child" and (2) the mental distress "resulting from the dramatic circumstances surrounding the stillbirth of their child." Defendants challenge both individual claims for negligently inflicted emotional distress on two grounds.

First, defendants note our courts have stated on occasion that there can be no recovery for mental anguish caused by concern for the welfare or peril of another person. *See, e.g., Williamson v. Bennett*, 251 N.C. 498, 508, 112 S.E. 2d 48, 55 (1960) (where plaintiff erroneously believed she had run over child, Court denied recovery for her mental anguish in part because anxiety was for safety of another, to wit, an "imaginary and non-existent child"); *Ferebee v. Norfolk So. R.R. Co.*, 163 N.C. 351, 355, 79 S.E. 685, 686 (1913) (where plaintiff testified he worried about his physical injury's effect on family, Court excluded testimony since damage must be result of injury affecting plaintiff and not probable effect on family). Defendants argue both plaintiffs' claims for emotional distress arose from their concern for "another person," *i.e.* their unborn son. Second, defendants argue neither plaintiff alleged the necessary fact that his or her negligently inflicted emotional distress was the proximate result of an actual physical impact or resulted in genuine physical injury. *Cf. Williamson*, 251 N.C. at 503, 112 S.E. 2d at 52.

### Peril-of-Another Prohibition

[4] In particular, defendants argue the case of *Hinnant v. Tidewater Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925), supports their argument that there exists an *absolute* prohibition of any recovery for negligent infliction of emotional distress caused by concern for another. The *Hinnant* Court stated:

> In the law, mental anguish is restricted, as a rule, to such mental pain or suffering as arises from an injury or wrong to the person himself, as distinguished from that form of mental suffering which is the accompanying of sympathy or sorrow for another's suffering, or which arises from a contemplation of wrongs committed on the person of another.

*Hinnant,* 189 N.C. at 129, 126 S.E. at 312. We note this is the same rationale earlier employed by the *Ferebee* Court to deny recovery. *Ferebee,* 163 N.C. at 355, 79 S.E. at 686 (damages must be confined to those which are "natural and proximate result" of injury as affects plaintiff and concern for effect on another cannot be considered). We further note the *Williamson* Court expressly relied on *Hinnant* in denying that plaintiff's recovery for mental anguish resulting from her concern for an imaginary child. Thus, although *Hinnant* addressed a consortium claim, its "remoteness" rationale was also extended, as in *Williamson,* to bar recovery for emotional distress in non-consortium cases. *See also Michigan Sanitarium and Benevolent Ass'n v. Neal,* 194 N.C. 401, 403, 139 S.E. 2d 841, 842 (1927) (where mother claimed hospital's negligent treatment of her 27-year-old son caused her mental anguish, Court held damages too remote under *Hinnant).*

It is therefore highly significant that our Supreme Court expressly overruled *Hinnant* in *Nicholson v. Hugh Chatham Memorial Hospital, Inc.,* 300 N.C. 295, 266 S.E. 2d 818 (1980). The *Nicholson* Court specifically rejected any notion that a spouse's emotional injury resulting from injury to the other spouse was too "remote" for measurement. 300 N.C. at 302, 266 S.E. 2d at 822; *see also* Byrd, *Recovery for Mental Anguish in North Carolina,* 58 N.C.L. Rev. 435, 450-51 n. 94 (1980) (stating mental anguish cannot be excluded from consortium claims given *Nicholson* Court's discussion of broad bonds of marital relationship); *Bailey v. Long,* 172 N.C. 661, 662, 90 S.E. 809, 810 (1916) (holding husband could recover for mental anguish caused by watching wife suffer from physician's negligence). After *Nicholson,* it follows that where some intimate relationships are affected, there is no longer any *absolute* prohibition against compensating emotional distress arising from injuries to others.

However, the existence of an intimate relationship between the plaintiff and the victim is not itself sufficient to permit com-

pensation for emotional distress which arises from plaintiff's sorrow or concern for the victim's injury. While there is no longer an absolute prohibition against such recovery, there are nevertheless limits of public policy inherent in the requirement that the plaintiff's injury be proximately caused by the tort-feasor since the definition of proximate cause necessarily includes two elements: (1) whether the action of the tort-feasor was the "cause-in-fact" of plaintiff's injuries; and (2) whether the tort-feasor's liability should as a matter of public policy extend to those injuries. *See generally* W. Keeton et al., *Prosser and Keeton on The Law of Torts* Sec. 42 (5th ed. 1984); *Wyatt v. Gilmore*, 57 N.C. App. 57, 61-62, 290 S.E. 2d 790, 793 (1982) (summarizing public policy limitations). However, the public policy limitations expressed by the "peril-of-another" prohibition have usually been discussed simply as issues of "remoteness." *See, e.g., Williamson*, 251 N.C. at 504, 112 S.E. 2d at 53 (discussing prohibition with respect to remoteness); *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E. 2d 325, 335 (1981) (stating recovery denied in *Williamson* because connection between minor accident and distress was too "tenuous" and "highly extraordinary"); *Ledford*, 87 N.C. App. at 92, 359 S.E. 2d at 507 (injury in *Williamson* was "too remote and unforeseeable").

While the prohibition against recovery for distress of another is no longer absolute after *Nicholson*, the trial judge may nevertheless be required to weigh public policy limitations on negligence liability where the plaintiff's injuries are arguably too remote as a matter of law. Consequently, while the jury normally determines whether a plaintiff has shown cause-in-fact and foreseeability, where it is contended that plaintiff's injuries are too remote as a matter of law, the trial court may be required to decide whether the tort-feasor was legally exempt from foreseeing plaintiff's injuries in the first place.

It is of course impossible to determine this question in advance for every situation with some fixed formula. However, the court should consider the facts before it in light of the following factors:

1) whether the injury is reasonably close in time and location to the act of the tort-feasor;

2) whether the extent of the injury is wholly out of proportion to the culpability of the tort-feasor;

3) whether, in retrospect, it is too highly extraordinary that the act of the tort-feasor caused the injury;

4) whether recovery would place an unreasonable burden upon those engaged in activities similar to that of the tort-feasor;

5) whether recovery would likely open the way for fraudulent claims; and

6) whether recovery would enter a field with no sensible or just stopping place.

*See Wyatt*, 57 N.C. App. at 62, 290 S.E. 2d at 793 (finding such public policy limitations did not prohibit claim for negligently inflicted emotional distress).

### Physical Injury Requirement

As to the "physical injury" requirement for negligently inflicted emotional distress, we first note as a preliminary matter that a physical "injury" is not required in North Carolina where "coincident in time and place with the occurrence producing the mental stress, some actual physical impact" is caused to the plaintiff. *Williamson*, 251 N.C. at 503, 112 S.E. 2d at 52. However, absent some impact, the emotional distress claimant must manifest some resulting physical injury. *Id.* Furthermore, where the claim for emotional distress is otherwise proper, our courts do not bar recovery simply because strictly separating "physical" from "mental" injuries is difficult:

[T]he general principles of the law of torts support a right of action for physical injuries resulting from either a willful or a negligent act none the less strongly because the physical injury consists of a wrecked nervous system instead of wounded or lacerated limbs, as those of the former class are frequently much more painful and enduring than those of the latter.

*May v. Western Union Tel. Co.*, 157 N.C. 416, 422, 72 S.E. 1059, 1061 (1911); *accord Stanback v. Stanback*, 297 N.C. 181, 199 n. 1, 254 S.E. 2d 611, 623 n. 1 (1981). Given the difficulty distinguishing "physical" from "mental" injuries, we also note numerous courts have rejected requiring separate allegation or even proof of a physical injury in connection with negligently inflicted emotional

distress. *E.g., Saint Elizabeth Hosp. v. Garrard,* 730 S.W. 2d 649 (Tex. 1987); *Molien v. Kaiser Foundation Hospitals,* 27 Cal. 3d 916, 616 P. 2d 813 (Cal. 1980).

A

[5] We first determine whether the mother has alleged a valid claim for negligently inflicted emotional distress. Treating the mother's allegations as true, she has suffered not one but two physical injuries as a result of defendants' alleged failure to treat her diabetes. First, her own incipient diabetes itself remained untreated for over nine months. *Cf. Ledford,* 87 N.C. App. at 91, 359 S.E. 2d at 90-91 (recovery for mental suffering allowed where mother suffered severe untreated abdominal pain and subsequent surgical removal of stillborn child); *Modaber v. Kelly,* 232 Va. 60, 348 S.E. 2d 233 (1986) (failure to treat mother's toxemia was physical injury to mother allowing her recovery for mental anguish). Second, the fetus attached to Mrs. Johnson's body allegedly died of malnutrition arising from defendant's failure to treat her diabetes. Under these circumstances, the physical injury to the Johnson fetus was also a physical injury to Mrs. Johnson which gave rise to her individual action for mental anguish. *See Modaber* (also holding injury to fetus was injury to mother for mental distress claim); *see also DiDonato,* 320 N.C. at 432 n. 3, 358 S.E. 2d at 494 n. 3 (mother's recovery for her mental anguish at having lost child would "presumably" be available in her own action).

Citing our decision in *Stam v. State,* 47 N.C. App. 209, 267 S.E. 2d 335, *aff'd in relevant part,* 302 N.C. 357, 275 S.E. 2d 439 (1981), defendants assert that our courts do not view an unborn child as part of the mother but rather as a separate entity. Defendants therefore assert that, contrary to the Virginia Supreme Court's decision in *Modaber,* this Court must hold that an injury to a fetus is not an injury to the mother justifying her recovery for emotional distress. On the contrary, we note the *Stam* Court simply held that a fetus is not a "person" enjoying the constitutional protections of Article I, Sections 1 and 19, of our state constitution. *Stam,* 47 N.C. App. at 218, 267 S.E. 2d at 342. The *Stam* Court's recognition that the legal fiction of "personhood" may or may not be imputed to a fetus for some purposes does not determine whether a physical injury to the Johnson fetus *in fact*

caused impact or resulting physical injury to Mrs. Johnson. *See Mackie*, 230 N.C. App. at 155, 52 S.E. 2d at 354 (legal personality "imputed" to unborn child for some, but not all, purposes). Whether Mrs. Johnson herself experienced an impact or physical injury as the result of injuries to this fetus must be determined by proof of physical, biological facts—not by the imputation of legal fictions. As the fetus is normally attached to the mother's uterine wall, we fail to see how a physical impact or injury to the fetus would not normally be an injury or impact to the mother. *Cf. Ledford*, 87 N.C. App. at 92, 359 S.E. 2d at 507 (fetus is connected to its mother "in the most intimate of ways"). We therefore hold Mrs. Johnson properly alleged a physical injury to herself sufficient to support her emotional distress claim.

[6] Furthermore, irrespective of any dispute concerning the scope of the prohibition of recovery for another's peril, we likewise reject defendants' argument that the prohibition has any application to Mrs. Johnson's individual mental anguish claim: so long as the fetus is physically connected to the mother, the fetus cannot be said to be "another" person for purposes of the prohibition. In light of those public policy limits discussed earlier, we in any event cannot conclude Mrs. Johnson's emotional distress at the death of this fetus was as a matter of law too remote. Where the fetus is so intimately attached to the mother, the mother's distress at the death of her fetus is not "remote" simply because the fetus may have reached a biological stage which, under *DiDonato*, renders it a legal "person" for purposes of the wrongful death statute. For these reasons, we hold the trial court erroneously dismissed the mother's claim for mental anguish arising from the death of this fetus.

B

[7] We next determine whether the father has alleged a valid claim for emotional distress. Citing our decision in *Woodell v. Pinehurst Surgical Clinic*, 78 N.C. App. 230, 336 S.E. 2d 716, *aff'd per curiam*, 316 N.C. 550, 342 S.E. 2d 523 (1986), defendants contend Mr. Johnson has failed to allege any impact or physical injury in connection with his emotional distress claim. In *Woodell*, we affirmed a trial court's summary judgment which had been entered after discovery was conducted. The *Woodell* plaintiff's forecast of evidence showed no physical injury where the plaintiff's

pregnancy went full term and resulted in the safe delivery of a healthy baby. *Id.* at 232, 336 S.E. 2d at 718; *see also Campbell v. Pitt County Memorial Hosp., Inc.*, 84 N.C. App. 314, 327, 352 S.E. 2d 902, 909-10, *aff'd*, 319 N.C. 458, 356 S.E. 2d 2 (1987) (at trial, father's evidence showed only genuine anguish without physical injury). Given the plaintiffs' failure in *Woodell* and *Campbell* to offer or even forecast evidence of any physical injury resulting from defendants' acts, those plaintiffs were not entitled to recover for mere mental anguish.

However, the facts of *Woodell* and *Campbell* do not determine Mr. Johnson's claim since defendants here must demonstrate under the standards of Rule 12(c) that *no* forecast of evidence could entitle him to recover on his claim as alleged. In *Stanback*, the Court specifically held that an allegation of "mental anguish" was itself sufficient to allege "physical injury" in connection with a claim for emotional distress:

> Although it is clear that plaintiff must show some physical injury resulting from the emotional disturbance caused by defendant's alleged conduct, given the broad interpretation of 'physical injury' in our case law, we think her allegation that she suffered great mental anguish and anxiety is sufficient to permit her to go to trial upon the question of whether the great mental anguish and anxiety (which she alleges) has caused physical injury.

*Stanback*, 297 N.C. at 198-99, 254 S.E. 2d at 623. While our Supreme Court later reversed itself in *Dickens* on requiring *any* proof of physical injury where the distress is intentionally inflicted, the *Dickens* Court approvingly referred to the *Stanback* holding quoted above. *Dickens*, 302 N.C. at 448, 276 S.E. 2d at 332. While the *Stanback* Court judged allegations of emotional distress against a motion under Rule 12(b)(6), we note Mr. Johnson's allegations are judged with equal indulgence where the motion is characterized as one under Rule 12(c). Therefore, we think the *Stanback* Court's reasoning on pleading "physical injury" is dispositive where the emotional distress is negligently inflicted.

As our Supreme Court has not rejected the physical injury requirement, we hold that Mr. Johnson's pleadings reveal no fact which would as a matter of law prohibit him from later more specifically forecasting or introducing evidence that his alleged

mental distress resulted in the necessary physical injury. *Cf. Crews v. Provident Finance Co.,* 271 N.C. 684, 690, 157 S.E. 2d 381, 385 (1967) (recovery allowed when distress resulted in nervousness, angina and elevated blood pressure); *Sparks v. Tennessee Mineral Products Corp.,* 212 N.C. 211, 212, 193 S.E. 31, 32 (1937) (recovery allowed where distress resulted in nervousness, weight loss, confinement in bed and other ailments); *Kirby v. Jules Chain Stores Corp.,* 210 N.C. 808, 809, 188 S.E. 625, 625 (1936) (recovery allowed where distress resulted in illness, pain and premature delivery); *see also Byrd,* 58 N.C.L. Rev. at 467 (stating Court has never held physical injury must be contemporaneous). We therefore hold the father's complaint adequately alleged the element of physical injury required in order to avoid dismissal of his emotional distress claim on the pleadings.

[8]  We next must determine if the father's alleged emotional distress arising from his concern for his son was so tenuous or remote as to be barred as a matter of public policy. In light of those limiting factors set forth earlier, we hold the father may proceed with proof of his emotional distress claim. First, the father's alleged damages were not as a matter of law so removed in time or location from the injuries to his wife and child that recovery should be barred as a matter of public policy: we specifically note that both plaintiffs were allegedly at the hospital when advised the fetus was dead and both allegedly "endured" Mrs. Johnson's induced labor. Second, we fail to see how "it would be too highly extraordinary" that defendants' allegedly causing this fetus's death would in turn cause the father's emotional distress: on the contrary this would seem to be the ordinary result of such negligence. Third, we cannot say as a matter of law that allowing the father's claim for emotional distress for the death of this child would place a burden on physicians any less reasonable than that already imposed with respect to the physician's treatment of the mother; nor should there be an increased possibility of fraudulent claims given the clearly traumatic circumstances of this case as well as the showing of physical injury required of the father. *See Woodell,* 78 N.C. App. at 232, 336 S.E. 2d at 78 ("physical injury" requirement avoids multitude of suits for less serious distress).

Finally, allowing this father the opportunity to prove his emotional distress claim does not "open a field that has no sensible or just stopping point." *Wyatt,* 57 N.C. App. at 62, 290 S.E.

2d at 793; *cf. Byrd*, 58 N.C.L. Rev. at 452-55 (noting recovery for mental anguish in negligent embalming cases deliberately restricted to next of kin). We note that during pregnancy the physician's relationship with both parents is foreseeable and may be often required. *Compare Bailey*, 172 N.C. at 662, 90 S.E. at 809 (mental anguish recovery allowed where husband witnessed wife's suffering from doctor's negligent maintenance of hospital room) *with Hinnant*, 189 N.C. at 125, 126 S.E. at 310 (noting husband in *Bailey* was not "stranger" to doctor/patient relationship since contract existed between husband and doctor for treatment of wife); *cf. Gallagher v. Duke Univ.*, 638 F. Supp. 979, 982-83 (M.D.N.C. 1986) (allowing physician's liability to couple for negligent genetic counseling and noting couple's right to plan family). There is no similarly foreseeable relationship between the attending physician and the public at large. Most important, the *DiDonato* Court's characterization of a fetus's wrongful death as an injury to the "family unit" clearly provides a sensible limit to the scope of liability. *See DiDonato*, 320 N.C. at 433, 358 S.E. 2d at 495 (injury is to family unit consisting of fetus, mother and father).

Thus, allowing this particular father's claim for emotional distress does not on its face necessarily thwart any relevant public policy limits on defendants' liability. Construing the father's pleadings in light of those limits, we cannot say that as a matter of law his alleged emotional distress was too remote or unforeseeable to permit recovery. In light of our earlier discussion of the adequacy of his allegations of physical injury, we therefore reverse the trial court's dismissal of the father's claim for negligently inflicted emotional distress.

IV

[9] Plaintiffs also seek to recover certain increased medical expenses as well as funeral bills. Such damages can only be recovered by the administrator of the fetal estate pursuant to an action under Section 28A-18-2. *See DiDonato*, 320 N.C. at 434, 358 S.E. 2d at 495; *Boulton v. Onslow County Bd. of Education*, 58 N.C. App. 807, 295 S.E. 2d 246 (1982). While plaintiffs may not recover these damages in their individual capacities, we note plaintiffs have asked for all damages allowed under the wrongful death statute.

Both parents have also claimed "all costs associated with medical care and lost wages during the entire term of a full-term pregnancy which resulted in fetal death *in utero*." Insofar as such costs and lost wages exceed the administrator's possible recovery under the wrongful death statute, such damages are compensable only in connection with the mother's, rather than the father's, injuries since the father's emotional injuries only arose at the end of the pregnancy. *Cf. Jackson v. Baumgardner*, 318 N.C. 172, 182-83, 347 S.E. 2d 743, 750 (1986) (denying father's recovery for costs of child care arising from wrongful birth of child). However, since we have noted the mother was herself allegedly injured by defendants' failure to treat her diabetes, we cannot say as a matter of law that she has not stated a claim for damages apart from her emotional distress arising from the death of her child. We therefore hold Mrs. Johnson should be allowed to prove she incurred these other damages throughout her pregnancy as a result of defendants' alleged acts and omissions.

In summary, we hold the trial court erroneously dismissed the administrator's wrongful death claim as well as the parents' claims for negligently inflicted emotional distress and Mrs. Johnson's claim for other damages. The judgment of the trial court is therefore reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Judges WELLS and EAGLES concur.