John Albert GALLAGHER; Kimberly
Miriam Gallagher,
Plaintiffs–Appellees,

and

Lisa Marie Gallagher, by next friend
Michelle Robertson, Plaintiff,

v.

DUKE UNIVERSITY,
Defendant-Appellant,

and

The Private Diagnostic Clinic; George
H. Mickey, Ph.D., Defendants.

John Albert GALLAGHER; Kimberly
Miriam Gallagher,
Plaintiffs–Appellants,

and

Lisa Marie Gallagher, by next friend
Michelle Robertson, Plaintiff,

v.

DUKE UNIVERSITY; the Private Diag-
nostic Clinic; George H. Mickey,
Ph.D., Defendants–Appellees.

John Albert GALLAGHER; Kimberly
Miriam Gallagher,
Plaintiffs–Appellees,

and

Lisa Marie Gallagher, by next friend
Michelle Robertson, Plaintiff,

v.

George H. MICKEY, Ph.D., Defendant–
Appellant,

and

Duke University; the Private
Diagnostic Clinic,
Defendants.

Nos. 87–1056, 87–1061 and 87–1062.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1988.

Decided July 28, 1988.

Opinion on Denial of Rehearing and
Rehearing In Banc Aug. 29, 1988.

774

Joel M. Craig (E.C. Bryson, Jr., Newsom, Graham, Hedrick, Bryson & Kennon, on brief), Timothy C. Barber (O. William Faison, Faison, Brown, Fletcher & Brough on brief) for Duke University et al.

Donald Beskind (Beskind and Rudolf, P.A., Neil R. Rosen, Evans, Rosen, Portnoy, Quinn & Donohue, on brief), for Gallagher et al.

Before ERVIN and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Duke University and Dr. George H. Mickey appeal the district court's judgment entered on the verdict of a jury awarding damages to John and Kimberly Gallagher for failure to detect a genetic abnormality resulting in the birth of a daughter who suffers severe physical and mental defects. The Gallaghers cross appeal, assigning error to the district court's refusal to measure damages by the life expectancy of their daughter, Lisa. They also appeal the district court's denial of their claim for emotional distress.[1]

Jurisdiction is founded on diversity of citizenship, and the case is governed by North Carolina law. We affirm the judgment in favor of the Gallaghers. We conclude that the district court properly declined to measure damages by Lisa's life expectancy. Relying primarily on North Carolina cases decided after the district court entered judgment, we vacate the court's dismissal of the Gallaghers' claim for emotional distress and remand the case for further proceedings on this issue.

I

Mrs. Gallagher gave birth to a daughter, Jennifer, who suffered severe, multiple birth defects. She was transferred from a

---

1. The district court's opinion is reported as *Gallagher v. Duke University*, 638 F.Supp. 979 (M.D.N.C.1986).

hospital in Jacksonville, North Carolina, to Duke for treatment, and died less than three weeks later. Dr. Mickey, a cytogeneticist at Duke, performed a chromosome analysis on a sample of Jennifer's blood and concluded that she had no genetic abnormalities.

The Gallaghers met with Duke staff members after Jennifer's death and were informed that based on Dr. Mickey's tests their chances of having a normal child were the same as the general population. The staff also informed the Gallaghers that there was no reason for either of them to be tested for any abnormal genetic traits because of the negative results of Jennifer's tests. Relying on this advice, the Gallaghers conceived a second child. They were referred to the University of North Carolina Genetic Counseling Department, where the staff concluded after examining Dr. Mickey's test results that an amniocentesis was unnecessary.

Lisa Gallagher was born on March 21, 1983, suffering severe birth defects similar to those that afflicted Jennifer. Lisa was transferred to Duke, where Dr. Mickey conducted a chromosome analysis on a sample of her blood. This time, Dr. Mickey discovered a genetic abnormality. He then re-examined the slides he had taken of Jennifer Gallagher and discovered that she possessed the same or a similar abnormality. Tests later conducted at the University of North Carolina revealed that Mr. Gallagher carried a genetic abnormality which he passed on to both Jennifer and Lisa and would likely pass on to some or all of his future children.

The Gallaghers sued Duke and Dr. Mickey, claiming that they would not have conceived and given birth to Lisa if they knew about Mr. Gallagher's genetic defect. The Gallaghers' complaint sought damages for the extraordinary expenses of caring for Lisa for the rest of her life, the loss of Lisa's future earnings, and for their own emotional distress. The court ruled that even if Duke and Dr. Mickey were liable, the Gallaghers could only recover damages for the extraordinary medical expenses that they would incur for Lisa's care during their lifetimes, despite the fact that Lisa was expected to outlive them and would continue to require medical attention and care. The jury returned a verdict in favor of the Gallaghers and awarded them $1,031,000 in damages, and the court entered judgment on the verdict. The court held that North Carolina law did not permit under the circumstances recovery for emotional distress, and the Gallaghers assign cross error to this ruling. The court dismissed a claim filed on behalf of Lisa for her "wrongful life" holding that it was not cognizable under North Carolina law. The Gallaghers do not appeal this dismissal. The jury exonerated another defendant, the Private Diagnostic Clinic, and the Gallaghers do not appeal the judgment in its favor.

## II

Dr. Mickey and Duke state that the sole issue for which they seek review is: "Did the district court err in concluding that a claim for relief for the wrongful birth of a genetically defective child is cognizable under North Carolina law?" They rely primarily on *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743 (1986), and *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985).

In *Jackson*, the Supreme Court of North Carolina held that a complaint alleging that a physician's failure to replace an intrauterine device resulting in the plaintiff's pregnancy and the consequent birth of a healthy child states a claim for medical malpractice based on wrongful conception. The Court explained its reasons as follows:

> Whatever a woman's reason for desiring to avoid pregnancy, when a physician undertakes to provide medical care or advice to her for that purpose, he or she must provide the professional services in that case, just as in the rendering of professional services in any instance, according to the established professional standards. Just as in any other case, a failure to measure up to the established standards results in negligence which becomes actionable if the negligence proximately causes legal injury.

318 N.C. at 177, 347 S.E.2d at 746–47. The court noted that it followed the majority rule, saying:

> Our survey shows that the vast majority of courts which have considered wrongful conception cases have viewed the case as being indistinguishable from an ordinary medical malpractice action where the plaintiff alleges a breach of duty on the part of a physician and resulting injury for failure to perform that duty.

318 N.C. at 179, 347 S.E.2d at 747.[2]

■ Tested by *Jackson*, the Gallaghers have proved a cause of action for medical malpractice based on wrongful conception that is recognized in North Carolina. They consulted Dr. Mickey to determine whether they should attempt to have a second child after their first child was born with severe defects. The doctor had a duty to exercise reasonable care in responding to their requests. *See Jackson*, 318 N.C. at 178, 347 S.E.2d at 747. The evidence disclosed that Dr. Mickey and Duke deviated from an acceptable standard of care in analyzing the cause of the defects to the Gallaghers' first child. Relying on this faulty analysis, the defendants misinformed the Gallaghers that they could have a normal child. Consequently, the defendants' negligence was the proximate cause of the birth of a profoundly defective child, Lisa. *Jackson* establishes that the Gallaghers' evidence is sufficient to show "the existence of a duty, breach of that duty, and damages resulting from the breach." 318 N.C. at 178, 347 S.E.2d at 747. Because the North Carolina Supreme Court recognizes a cause of action for medical malpractice based on wrongful conception when a normal child is born, we are confident that the Court would recognize a cause of action based on the same malpractice when a genetically defective child is born.

### III

The next question is the proper measure of damages. The North Carolina Supreme Court cited with approval the reasoning of

*Miller v. Johnson*, 231 Va. 177, 343 S.E.2d 301 (1986), a wrongful conception case, which held that the parents could recover medical expenses and damages for pain and emotional distress suffered by the mother. 318 N.C. at 183, 347 S.E.2d at 750.

The North Carolina Court, however, held (with one justice dissenting) that the Jacksons could not recover the cost of rearing their healthy baby. It referred to its decision in *Azzolino* in which it said that "life, even life with severe defects, cannot be an injury in the legal sense." 315 N.C. at 109 and 111, 337 S.E.2d at 532 and 534. The Court concluded that recovery of the costs of rearing a healthy child would be contrary to the holding and rationale of *Azzolino*. The Court also reasoned that recovery of the costs of rearing a normal child should not be allowed because of the difficulty of determining the value of the off-setting benefits from the child's life. The result, the Court concluded, would necessarily be based on speculation and conjecture. 318 N.C. at 183, 347 S.E.2d at 750. In North Carolina speculative damages cannot be recovered. *DiDonato v. Wortman*, 320 N.C. 423, 430, 358 S.E.2d 489, 493 (1987) (citing *Jackson*).

■ The Gallaghers' claim, unlike the Jacksons', does not present the difficulty of offsetting the costs of care with the benefits of parenthood. No evidence of benefits was introduced. Lisa is profoundly impaired. Her learning and cognitive skills will never develop past those of a one and one-half year old child. Dr. Mickey and Duke acknowledge in their brief:

> The evidence at trial tended to show that Lisa Gallagher suffers from severe developmental problems associated with her genetic defects. It is not anticipated that she will ever develop an ability to care for herself. She will require special schooling and medical treatment and may need to be institutionalized at such time as her parents are unable to care for her at home.

---

**2.** For comment on *Jackson* and a national survey of cases on this subject *see* Note, *Wrongful Conception, North Carolina's Newest Prenatal Tort Claim*, 65 N.C.L.Rev. 1077 (1987).

The court's charge did not require the jury to attempt to offset the extraordinary costs of caring for Lisa by any benefits. The instruction on the calculation of damages followed traditional tort principles and resulted in a verdict that was neither speculative nor conjectural. Dr. Mickey and Duke do not assign error to the size of the verdict. In view of Lisa's impairments we are confident that North Carolina courts would not attempt to offset the expense of caring for her by the benefits that a normal daughter affords her parents. For this reason the Gallaghers' claim for the costs of caring for Lisa does not present the fatal calculation problem that *Jackson* discussed.

We also are persuaded that the district court correctly decided that the North Carolina Supreme Court would not hold that *Azzolino* bars the Gallaghers' cause of action and recovery of damages. *Azzolino* dealt with a claim of wrongful birth brought by parents of an impaired child. The complaint alleged that after Mrs. Azzolino became pregnant, employees of a clinic failed to advise her about the availability of amniocentesis and genetic counseling. As a result, she gave birth to a defective child. She alleged that if she had been properly advised, she would have terminated her pregnancy by abortion. The court described Mrs. Azzolino's claim as one for "wrongful birth." It defined this term as follows: " 'Wrongful birth' refers to the claim for relief of parents who allege that the negligent treatment or advice deprived them of the choice of terminating pregnancy by abortion and preventing the birth of the defective child." 315 N.C. at 107, 337 S.E.2d at 531.

The Court held (with three justices dissenting) that "claims for relief for wrongful birth of defective children shall not be recognized in this jurisdiction...." 315 N.C. at 110, 337 S.E.2d at 533. Explaining its reasons, the court first observed that when Mrs. Azzolino consulted the doctor the defective fetus was in existence and assumed for the purpose of argument that birth was the proximate result of the defendants' negligence. 315 N.C. at 111, 337 S.E.2d at 533. The court then reasoned that traditional tort analysis could go no further because the next step required holding that the existence of human life, because it was defective, was an injury cognizable at law. The court declined to take this step. 315 N.C. at 111, 337 S.E.2d at 533–34.

In *Jackson,* the defendant urged the Court to dismiss the Jacksons' claim on the basis of *Azzolino.* The Supreme Court, however, rejected this argument by explaining the difference between a claim for wrongful birth and a claim for wrongful conception as follows:

Defendant has failed to make a critical distinction between the types of claims involved in *Azzolino* and in the instant case. Mrs. Azzolino did not complain about becoming pregnant; she complained about having a child with certain defects. In reaching its result in *Azzolino,* the Court stressed the fact that defendant Dingfelder was not responsible for the existence of either little Michael Azzolino or his defects. *Id.* at 111, 337 S.E.2d at 534. ("It should be reemphasized here that the plaintiffs only allege that the defendants negligently caused or permitted an already conceived and defective fetus not to be aborted. The plaintiffs do not allege that the defendants in any way directly caused the genetic defect. Therefore, the only damages the plaintiffs allege they have suffered arise, if at all, from the failure of the defendants to take steps which would have led to abortion of the already existing and defective fetus.") Here, what plaintiff sought was a means to avoid pregnancy itself. The injury she alleges is that she became pregnant. She also alleges that defendant's negligence contributed to her pregnancy. In arguing that plaintiff has alleged no cognizable damages under *Azzolino,* defendant is equating the condition of the pregnant plaintiff with the life of her child. Rather, it is the fact of the pregnancy *as a medical condition* that gives rise to compensable damages and completes the elements for a claim of negligence. (emphasis in original).

318 N.C. at 180–81, 347 S.E.2d at 748.

■ Although the parties and the district court sometimes referred to the Galla-

ghers' action as a claim for wrongful birth, it is evident that, like the claim of Mrs. Jackson, it was for wrongful conception. The differences the court emphasized between Mrs. Azzolino's claim for wrongful birth and Mrs. Jackson's claim for wrongful conception apply to Mrs. Gallagher's claim for wrongful conception. Therefore, just as *Azzolino* did not bar Mrs. Jackson's cause of action for wrongful conception, *Azzolino* does not bar Mrs. Gallagher's cause of action for wrongful conception.

Also, neither *Azzolino* standing alone nor read in conjunction with *Jackson* bars the Gallaghers' claim for the extraordinary expenses of Lisa's care. *Azzolino* pointed out the difficulty in a wrongful birth case of measuring the damages resulting from life as compared to the termination of life through abortion. 315 N.C. at 111–17, 337 S.E.2d at 533–37. *Jackson* perceived the same difficulty in a somewhat different context. In *Jackson* it was the difficulty of offsetting the costs of care with the incalculable benefits of having a healthy child. The result would be speculative and conjectural. Hence under traditional tort principles, the result was unacceptable. 318 N.C. at 183, 347 S.E.2d at 750.

The Gallaghers' claim, in contrast, presents no occasion for attempting to value a life that were it not for the defendants' negligence would have been terminated by abortion. Nor is there any need to attempt an offset of the costs of care with the incalculable benefits of having a healthy child. *Jackson* establishes that the Gallaghers' claim for medical malpractice based on wrongful conception is cognizable under North Carolina law. Unlike the damages sought in *Jackson* and *Azzolino*, the Gallaghers' damages can be ascertained by the application of traditional tort principles that apply in medical malpractice cases. We conclude that the district court properly entered judgment on the verdict of the jury.

## IV

The district court refused to allow Mr. and Mrs. Gallagher to recover damages for any of the extraordinary medical expenses that Lisa will incur after her parents' deaths. It rejected the Gallaghers' argument that, because they will have to put money aside during their lives in order to insure that Lisa is properly cared for after their deaths, they are bearing all of Lisa's medical expenses for the rest of her life and should be compensated for all of them.

We too must reject this argument. As the Gallaghers' own brief makes clear, the injury for which they seek compensation is to them, not to their child. While it is certainly understandable that the Gallaghers wish to insure that Lisa receives proper care after their deaths, we cannot ignore the North Carolina law that terminates their obligation to support Lisa at their deaths. *Layton v. Layton*, 263 N.C. 453, 456, 139 S.E.2d 732, 734 (1965). Any decision to put money aside for her care after their deaths, as far as North Carolina law is concerned, is voluntary.

## V

The Gallaghers also urge us to reverse the district court's order denying them recovery for the emotional distress that they alleged they suffered and continue to suffer as a result of the defendants' negligence. After the district court denied recovery, the North Carolina Court of Appeals decided two cases which we believe afford precedent for allowing the Gallaghers' claim to proceed to trial.

In *Ledford v. Martin*, 87 N.C.App. 88, 359 S.E.2d 505 (1987), *review denied*, 321 N.C. 473, 365 S.E.2d 1 (1988), the plaintiffs brought a wrongful birth claim and claims for the "physical, mental and emotional injuries" that Mrs. Ledford suffered after her fetus died before birth and had to be surgically removed because of her obstetrician's alleged negligence. The Court of Appeals held that the plaintiffs' complaint stated a cognizable claim for damages not only for the emotional distress that Mrs. Ledford suffered as a result of the surgery but also for the emotional distress that she suffered as a result of the death of her fetus. 87 N.C.App. at 92, 359 S.E.2d at 507.

Mrs. Gallagher has suffered physical injuries similar to those suffered by the plaintiff in *Ledford*. She suffered the abdominal pains associated with the labor and delivery of Lisa. She would not have suffered those pains had the defendants' negligence not induced her to conceive. We see very little difference, then, between the plaintiff's physical injury in *Ledford* and Mrs. Gallagher's physical injury. *See also Jackson*, 318 N.C. at 183 and 186–87, 347 S.E.2d at 750 and 752.

Mrs. Gallagher's emotional distress as a result of giving birth to and raising a handicapped child is certainly as foreseeable as the plaintiff's emotional distress in *Ledford* for losing her fetus. In both cases, the women sought professional advice in order to give birth to healthy, normal children. Mrs. Gallagher specifically informed Dr. Mickey that she did not wish to conceive unless she had a normal chance of giving birth to a healthy child. Thus, any claim that it was not reasonably foreseeable that she would suffer emotional distress if the defendants' negligence induced her to conceive a handicapped child is groundless.

In *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 89 N.C.App. 154, 365 S.E.2d 909 (1988), the North Carolina Court of Appeals allowed both parents to assert claims for emotional distress arising out of the death of a fetus allegedly caused by the defendants' negligent failure to treat Mrs. Johnson's diabetes. Relying on *Ledford* the Court allowed Mrs. Johnson to recover damages for emotional distress because of the physical injury she suffered. 89 N.C.App. at 167, 365 S.E.2d at 917.

■ The court also ruled that Mr. Johnson should not be foreclosed from showing that "his alleged mental distress resulted in the necessary physical injury." 89 N.C. App. at 168–69, 365 S.E.2d at 918. The court held that public policy did not bar the claim. 89 N.C.App. at 169–70, 365 S.E.2d at 918–19. While we are not bound by the court of appeals' exposition of North Carolina law, we can accept it in the absence of contrary views expressed by the North Carolina Supreme Court. Accordingly, we hold that Mr. and Mrs. Gallaghers' claims for emotional distress should not have been denied as a matter of law.

We affirm the district court's entry of judgment on the verdict returned in favor of the Gallaghers. We vacate the district court's ruling denying recovery for emotional distress as a matter of law and remand the case for further proceedings on this issue. The issue of liability is firmly established by the verdict of the jury and the district court's denial of postverdict motions. It need not be retried in connection with the claims for emotional distress.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

### On Rehearing and Suggestion for Rehearing In Banc

The petition for rehearing filed by Duke University and George H. Mickey, Ph.D., the suggestion for rehearing in banc, and a motion for leave to file a supplemental appendix were submitted to this court. As no member of this court or the panel requested a poll on the suggestion for rehearing in banc, and

As the panel considered the petition for rehearing and the motion and is of the opinion that the motion should be granted and that the district court should be authorized in its discretion to defer further proceedings on remand until the Supreme Court of North Carolina decides *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.* (petition for discretionary review allowed June 30, 1988),

IT IS ORDERED that in all other respects the petition for rehearing and suggestion for rehearing in banc are denied.

Entered at the direction of Judge Butzner, with the concurrence of Judge Ervin and Judge Wilkins.